**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Timothy GRAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 25, 2004.

Filed Jan. 20, 2005.

John Packel, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: JOYCE, STEVENS and ORIE MELVIN, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, Timothy Gray, appeals from the judgment of sentence entered on October 20, 2003 in the Court of Common Pleas of Philadelphia County. For the following reasons, we affirm. The relevant facts and procedural history are as follows.

¶ 2 On May 13, 2003, the Commonwealth charged Appellant with, *inter alia*, aggravated assault, simple assault and possessing an instrument of crime[1] stemming

---

1. 18 Pa.C.S.A. §§ 2702, 2701 and 907, respectively.

from allegations that he stabbed Adeleide Geter in the face and arm with a knife and a screwdriver. The case proceeded to a bench trial, at which time, the Commonwealth presented the testimony of two police officers from the Philadelphia Police Department. Officer Rafael Nieves–Concepcion testified that, on March 4, 2003, he and his partner, Officer Randall Farward, were conducting a routine patrol at the intersection of Callowhill and 61st Streets in Philadelphia. Officer Nieves–Concepcion stated that, while proceeding eastbound on Callowhill Street, a group of women approached the officers and stated that a pregnant woman may have been assaulted further down the street. In response to this information, the officers proceeded down the block and observed a crowd of people in front of the residence at 6013 Callowhill Street. Officer Nieves–Concepcion testified that, upon exiting their vehicle, a young pregnant woman (later identified as Shaidla Geter) approached them and stated that she had been assaulted, that her mother (later identified as Adeleide Geter) had just been stabbed upstairs by her mother's boyfriend (later identified as Appellant), and that Appellant remained upstairs with her mother. Officer Nieves–Concepcion testified that the pregnant woman was crying and appeared flustered. The pregnant woman also pointed to a ten-inch kitchen knife that was lying on the ledge of the neighboring home. The officer testified that he and his partner drew their weapons and entered the home. Upon arriving at a second floor bedroom, Officer Nieves–Concepcion observed a struggle between a man and a woman and heard the woman yelling "get him off me." N.T. Trial, 9/4/03, at 10. At the time the officers entered the bedroom, the officers observed the victim lying on the bed and Appellant lying beneath her on the floor. The officer observed the man grabbing the woman's arm and two or three children striking the man with plastic baseball bats. The children were yelling "get off my Mom" and appeared to be approximately seven to eight years old. *Id.* at 11, 26. Officer Nieves–Concepcion also testified that the woman was trying to pull her arm away from Appellant, was crying, and was bleeding badly from her arm and from a wound above her eye. The officers grabbed Appellant, pried him off of the victim, wrestled him to the floor, and placed him under arrest. Officer Nieves–Concepcion stated that his partner, Officer Farward, then proceeded to ask the victim what had happened. The victim responded that appellant had stabbed her. Officer Nieves–Concepcion testified that other officers at the scene recovered the knife. The officer also described the victim as a "very petite woman", approximately 5′9″, and approximately 135 pounds. *Id.* at 22. The officer described Appellant as approximately 5′9″ or 5′10″ in height and weighing approximately 170 pounds. *Id.*

¶ 3 During his testimony, Officer Randall Farward predominantly echoed his partner's testimony. Nevertheless, Officer Farward added that they "did not get anything out of the victim" until the officers took her downstairs and managed to calm her down. *Id.* at 46. Officer Farward explained that it took five or ten minutes to calm the victim down. Upon questioning the victim, the victim informed the officers that Appellant had struck her daughter during an argument and then proceeded to attack the victim with a knife. Officer Farward further stated that he personally observed two fresh cuts on the victim's left arm and head and saw two puncture wounds on her arm as well. Unlike his partner, however, Officer Farward testified that Appellant's daughter did not point them toward the knife until they had placed Appellant under arrest. Finally,

Officer Farward testified that paramedics also took Appellant to the hospital for treatment but did not elaborate on any injuries that Appellant may have suffered.

¶ 4 At the conclusion of the officers' testimony, the Commonwealth and defense stipulated that the victim's medical records would show that the victim was treated in the emergency room at the Hospital of the University of Pennsylvania and that, upon arrival, the victim complained of being stabbed in the face, head and left arm with a knife and screwdriver. They also stipulated that the records custodian from the Hospital of the University of Pennsylvania would testify that the court was provided with an accurate copy of the victim's medical records and that the records were kept in the ordinary course of hospital business. The parties also stipulated that the victim's treating physician would testify that the victim complained of being stabbed with a knife in the arm and of being stabbed in the scalp and right forehead with a screwdriver.[2] The physician would also testify that he treated the victim's superficial "stab lacerations" with irrigation, stitches and the application of dressing. *Id.* at 69.

¶ 5 After counsel made the aforementioned stipulations, the Commonwealth and defense rested their cases. Thereafter, the trial court convicted Appellant of aggravated assault (attempting to cause serious bodily injury), a felony of the first degree, simple assault and possessing an instrument of crime. On October 20, 2003, the trial court sentenced Appellant to a five to ten year term of imprisonment and a consecutive ten year term of reporting probation on the aggravated assault conviction and a consecutive two and one half to five years' imprisonment on the possessing an instrument of crime conviction. The trial court did not sentence Appellant on his conviction for simple assault since it merged with his aggravated assault conviction. This timely appeal followed.

¶ 6 In his brief, Appellant raises the following issues for our review:

1. Was not the evidence insufficient where the conviction rested solely on hearsay and where the Commonwealth failed to disprove self-defense or, alternatively, prove aggravated assault, felony of the first degree, in the absence of proof of intent to cause serious bodily injury, in violation of the due process provisions of the United States and Pennsylvania Constitutions?

2. Did not the lower court err in admitting into evidence as an "excited utterance" or "present sense impression" the unreliable hearsay of an absent complainant and witness where the witnesses had a motive to fabricate as [A]ppellant himself had suffered multiple wounds and where the Commonwealth failed to demonstrate that the statements were made as events unfolded and were truly spontaneous and not the product of reflection?

3. Did the admission of the hearsay statements given to police violate [A]ppellant's right to confront and cross-examine witnesses under the United States and Pennsylvania Constitutions where the statements were "testimonial" and where [A]ppellant was not given an opportunity to cross-examine these witnesses?

Appellant's Brief, at 4.[3]

■ ¶ 7 In his first issue, Appellant contends that the Commonwealth presented

---

**2.** Officer Nieves–Concepcion testified that the officers did not look for or recover a screwdriver because the victim did not inform the officers at the scene that Appellant had also used a screwdriver.

**3.** We have reorganized Appellant's issues for ease of disposition.

insufficient evidence to sustain his conviction for aggravated assault. Appellant's Brief, at 24. Specifically, Appellant argues that the evidence, viewed in the light most favorable to the Commonwealth, does not establish that Appellant attempted to inflict serious bodily injury upon the victim. *Id.* at 25. Further, Appellant contends that the Commonwealth failed to disprove his theory of self-defense. *Id.* Finally, Appellant contends that Appellant's conviction violates due process since the conviction was solely based upon hearsay evidence. *Id.* at 24.

■ ¶ 8 When reviewing a sufficiency claim, we employ the following standard of review:

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Nahavandian*, 849 A.2d 1221, 1229–1230 (Pa.Super.2004) (citations omitted). Furthermore, "[i]n evaluating the sufficiency of the evidence, we do not review a diminished record." *Commonwealth v. Palmer*, 751 A.2d 223, 227 (Pa.Super.2000). "Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Id.*

■ ¶ 9 Under the Crimes Code, a person may be convicted of aggravated assault, graded as a felony of the first degree, if he/she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Further, the Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ." 18 Pa. C.S.A. § 2301. "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gruff*, 822 A.2d 773, 776 (Pa.Super.2003), citing *Commonwealth v. Galindes*, 786 A.2d 1004, 1009 (Pa.Super.2001), *appeal denied*, 569 Pa. 691, 803 A.2d 733 (2002). "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result." *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627

A.2d 183, 186 (1993), quoting 18 Pa.C.S.A. § 302(b)(1)(i).

¶ 10 Our review of the record reveals that Shaidla Geter alerted the police that Appellant had stabbed her mother in the upstairs of the home. When the police arrived in the upstairs bedroom, they observed the victim, Adeleide Geter, screaming and trying to pull herself away from Appellant. The officers also observed that Appellant held the victim by the wrist. The officers saw a number of children striking Appellant with plastic bats and demanding that Appellant release the victim. The officers observed a number of puncture and stab wounds on the victim's arm and a bloody wound above her eye. Additionally, the parties stipulated that the victim informed her doctor that she had been stabbed in the arm with a knife and in the forehead and scalp with a screwdriver. Viewing this evidence in the light most favorable to the Commonwealth, the fact-finder could conclude that Appellant perpetrated the instant assault and that the infliction of multiple stab wounds, including a wound above the eye and a wound to the scalp, demonstrated his intent to inflict serious bodily injury. Therefore, we find that the Commonwealth presented sufficient evidence for the fact-finder to infer that Appellant attempted to inflict serious bodily injury upon the victim.

¶ 11 Next, we must ascertain whether the Commonwealth presented sufficient evidence to demonstrate, beyond a reasonable doubt, that Appellant did not act in self-defense. When reviewing a claim that the Commonwealth presented insufficient evidence to disprove a claim of self-defense, we are mindful that

> [t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Commonwealth v. Torres*, 564 Pa. 219, 223–24, 766 A.2d 342, 345 (2001).

¶ 12 In his brief, Appellant asserts that he raised the issue of self-defense when he elicited testimony, on cross-examination, that paramedics took Appellant to the hospital for the treatment of injuries after the police arrested him. Without passing upon the issue of whether Appellant sufficiently invoked a claim of self-defense with this evidence alone, we note that the Commonwealth presented sufficient evidence to demonstrate that Appellant did not act in self-defense. Foremost, when the officers arrived on the scene, they observed Appellant acting as the aggressor; Appellant was clasping the victim's arm and was attempting to pull her to the floor. The victim was crying, was bleeding from the arm and above the eye, and was trying to release her arm. Children were striking Appellant with bats and demanding that he release the victim. Furthermore, when the officers intervened and grabbed Appellant, Appellant struggled with the officers and had to be wrestled to the ground. The officers also testified that the victim was a "very petite woman" and that Appellant weighed approximately forty pounds more than the victim. Viewing these circumstances in their entirety, and in the light most favorable to the Commonwealth as the verdict winner, we conclude that the

Commonwealth amply demonstrated that Appellant acted as the aggressor.

¶ 13 Finally, Appellant contends that the Commonwealth has presented insufficient evidence to sustain his conviction because the Commonwealth solely relied upon out-of-court statements to convict Appellant. Appellant's Brief, at 25. Furthermore, Appellant argues that the trial court's technical application of the hearsay rules violates due process because it did not afford Appellant an opportunity to fully cross examine the witnesses against him. *Id.*

■ ¶ 14 Because Appellant has framed this issue in the context of a sufficiency claim, we must make several observations. Foremost, our oft-applied standard of review in sufficiency cases requires us to evaluate the entire record including all evidence actually received. *Nahavandian,* 849 A.2d at 1229–30. Therefore, to the extent that Appellant asks us to review his sufficiency claims on the basis of a diminished record, we may not do so. *Palmer,* 751 A.2d at 227.[4]

■ ¶ 15 Second, we need not consider Appellant's claim that, where the Commonwealth solely relies upon hearsay evidence, the evidence is too weak and inconclusive to sustain a conviction. *See generally California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (stating, in *dicta,* that a sufficiency of evidence claim may have merit where the Commonwealth relied almost entirely on two prior inconsistent statements of an eyewitness and where the statements

themselves were inconsistent); *United States v. Orrico,* 599 F.2d 113, 118 (6th Cir.1979) (finding hearsay evidence insufficient to sustain a conviction where "such evidence is the only source of support for the central allegations of the charge, especially when the statements barely, if at all, meet the minimum requirements for admissibility"). The certified record demonstrates that the Commonwealth introduced additional evidence apart from the challenged hearsay, namely, the officers' personal observations at the scene coupled with the stipulated admission of the victim's hospital records. Accordingly, we do not find that Appellant has raised a meritorious challenge to the sufficiency of the evidence.[5]

■ ¶ 16 In his second issue, Appellant contends that the trial court abused its discretion when it permitted Officers Nieves–Concepcion and Farward to testify about the out-of-court statements made by Shaidla Geter and the victim. Appellant's Brief, at 19. Appellant contends that the statements of Shaidla and the victim constituted inadmissible hearsay, and did not qualify under the excited utterance or present sense impression exceptions to the hearsay rule, because the women made the statements to police after they had time to reflect upon the incident. *Id.*

■ ¶ 17 When reviewing a challenge to the admissibility of evidence, we note that "[t]he admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be

4. Although Appellant cites a number of cases where courts have reviewed claims asserting due process violations and have concluded that these claims are meritorious, these cases did not involve challenges to the sufficiency of the evidence and did not prohibit retrial. *See Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Common-*

*wealth v. Mangini,* 493 Pa. 203, 425 A.2d 734 (1981); *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406 (1999).

5. We will discuss *infra* Appellant's claim that he was denied his constitutional right to confront witnesses against him due to the admission of certain hearsay statements.

reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Boczkowski*, 577 Pa. 421, 451, 846 A.2d 75, 93 (2004). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Carter*, 2004 PA Super 420 ¶ 7, 861 A.2d 957 (2004) (*en banc*). "Hearsay is defined as 'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Commonwealth v. Cunningham*, 805 A.2d 566, 572 (Pa.Super.2002), *appeal denied*, 573 Pa. 663, 820 A.2d 703 (2003), citing Pa.R.E. 801(c). "Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence[,] by other rules prescribed by the Pennsylvania Supreme Court, or by statute." *Id.*

¶ 18 In determining whether an out-of-court statement constitutes an excited utterance, we are mindful of the following principles:

Rule 803(2) of the Pennsylvania Rules of Evidence permits the admission of an excited utterance as an exception to the general rule that hearsay evidence is inadmissible. The Rule defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event." In *Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 119–120 (2001), this Court held that for a statement to be considered an excited utterance, it must be made spontaneously and without opportunity for reflection:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective though processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event. *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704, 712 (1992), quoting *Commonwealth v. Green*, 487 Pa. 322, 409 A.2d 371, 373–74 (1979).

In *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858, 862–63 (1978), this Court further held that there is no clear-cut rule as to the time sequence required for a statement to qualify as an excited utterance, but rather that fact-specific determination is to be made on a case-by-case basis.

*Id.* at 455–56, 846 A.2d at 95–96. Additionally, "[i]n assessing a statement offered as an excited utterance, the court must consider, among other things whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa.Super.2002). Our Courts have not established a bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement. *Id.* Rather, "[t]he crucial question,

regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Id.* (quotations omitted). "It is the spontaneity of ... an excited utterance [that] is the source of reliability and the touchstone of admissibility." *Id.* (quotations omitted).

¶ 19 To qualify under the present sense impression to the hearsay rule, the out-of-court statement must describe or explain "an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Cunningham,* 805 A.2d at 573, quoting Pa.R.E. 803(1). This exception permits testimony of declarations concerning conditions or events observed by the declarant regardless of whether the event was exciting. *Id.* (citations omitted). The trustworthiness of these declarations does not depend upon whether the declarant is excited or is emotionally affected by the event. Comment, Pa.R.E. 803(1). Rather, the trustworthiness of the statements depends upon the timing of the statement. *Id.* "The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." *Cunningham,* 805 A.2d at 573 (citations omitted).

¶ 20 In the instant case, the Commonwealth argues that the out-of-court statements made by Shaidla Geter constituted excited utterances. Appellee's Brief, at 12. Upon our review, we agree. Foremost, the evidence of record reveals that Shaidla witnessed a startling event, namely, an assault, and made a number of spontaneous statements to the police pertaining to the alleged assault. Officer Nieves–Concepcion testified that, when the officers

exited their patrol car, Shaidla approached them and stated that she had been assaulted, her mother had been stabbed, and that the perpetrator remained upstairs with her mother. Secondly, the record illustrates that Shaidla made the statements while dominated by nervous excitement, not her reflective faculties. The officer testified that, while making the statements, Shaidla cried and appeared flustered. Third, the record indicates that Shaidla made the statements near in both time and place to the alleged assault. Specifically, Officer Nieves–Concepcion testified that Shaidla made the statements while standing outside the home and while Appellant continued to perpetrate the assault upon her mother. Finally, the Commonwealth even presented evidence to corroborate that Appellant committed an assault upon the victim, namely, the officers testified that they witnessed Appellant's aggression toward the victim upon entering the upstairs' bedroom. Accordingly, we do not find that the trial court abused its discretion when it admitted this testimony under the excited utterance exception to the hearsay rule.[6]

¶ 21 Next, Appellant contends that the victim's statements to police did not qualify under the excited utterance or present sense impression exceptions to the hearsay rule. Appellant's Brief, at 20. Specifically, Appellant maintains that the victim made her statements to police after she had calmed down and nearly five to ten minutes after the assault occurred. *Id.* at 22, 24. We decline to review this claim of error, however, because the admission of this evidence, even if error, was harmless.

¶ 22 An error is harmless if

(1) the error did not prejudice the defendant or the prejudice was de minimis;

---

6. Upon our determination that Shaidla Geter's statements qualified as an excited utterance, we need not consider whether they

would also be admissible under the present sense impression exception.

(2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Stallworth,* 566 Pa. 349, 368, 781 A.2d 110, 120 (2001).

¶ 23 Herein, Appellant argues that the trial court should not have permitted the officer to testify to the victim's out-of-court statements that Appellant struck her daughter during an argument and then stabbed the victim with a knife. Our review of the record reveals, however, that these statements were merely cumulative of other properly admitted evidence. Shaidla Geter's statements that Appellant had assaulted her and stabbed her mother with a knife were admitted under the excited utterance exception. Additionally, the parties stipulated that the victim informed her doctor that she had been stabbed with a knife and a screwdriver in the head and arm. The officers also testified that they did not see any other adults in the home while rushing to the bedroom. Due to the cumulative nature of the victim's statements, we conclude that their admission, if error, was harmless.

¶ 24 In his third issue, Appellant contends that the trial court abused its discretion when it admitted the out-of-court statements of Shaidla Geter and the victim since their admission violated Appellant's constitutional right to confrontation. Appellant's Brief, at 11. As support for this proposition, Appellant cites *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Id.* In its brief, the Commonwealth contends that Appellant has waived this issue for failing to raise it at trial and, in the alternative, contends that *Crawford* does not bar the admission of the aforementioned testimony. Appellee's Brief, at 6, 8.

¶ 25 In *Crawford v. Washington, supra,* the trial court convicted Crawford, after a bench trial, of assault and attempted murder. At the trial, Crawford asserted that he had stabbed the victim in self-defense. To rebut this claim of self-defense, the trial court permitted the prosecution to offer the out-of-court statements of Crawford's wife, a witness to the assault. The police had taken the statements of Crawford's wife during an interrogation of her at the police station. On appeal, the Washington State Supreme Court determined that the statements of Crawford's wife did not qualify as an exception to the hearsay rule. Rather, it concluded that the statements bore adequate indicia of reliability because her characterization of the assault was virtually identical to her husband's version. Due to these indicia of trustworthiness, the Washington Supreme Court determined that Crawford's constitutional right to confrontation had not been abridged when the trial court admitted the statements.

¶ 26 The United States Supreme Court granted *certiorari* and, in March of 2004, issued a decision that substantially altered Sixth Amendment jurisprudence. Specifically, the Supreme Court held that, when the prosecution seeks to introduce a "testimonial" out-of-court statement into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness. In so holding, the Supreme Court overruled its previous decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The *Roberts* Court had held that out-of-

court statements made by an unavailable witness were admissible against a criminal defendant if the statement fell within a firmly rooted hearsay exception or otherwise bore particularized guarantees of trustworthiness.

¶ 27 In overruling *Roberts,* the *Crawford* court examined the purpose behind the Confrontation Clause. It noted that the civil law practice in England permitted justices of the peace or other officials to examine suspects and witnesses prior to trial and that the courts would permit these out-of-court examinations to be read into the record at a criminal trial. The *Crawford* court concluded that the Confrontation Clause was fashioned to eliminate this use of *ex parte* examinations as evidence against the accused. In light of this purpose, the Court departed from the rule in *Roberts* since "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364.

¶ 28 The *Crawford* Court did specify, however, that the Confrontation Clause only sought to protect a defendant from *testimonial* out-of-court statements. Although the Supreme Court refused to define "testimonial" statements, it did offer the following guidance:

> Various formulations of this core class of "testimonial" statements exist: *ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, ... extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony,

> or confessions, ...statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial .... ...
> These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.

> Statements taken by police officers in the course of interrogations are also testimonial even under a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of the oath was not dispositive.... That interrogators are police officers rather than magistrates does not change the picture either. Justices of the peace conducting examinations under the Marian statutes were not magistrates as we understand that office today, but had an essentially investigative and prosecutorial function.... The involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police officers or justices of the peace.

*Crawford,* 541 U.S. at 51–53, 124 S.Ct. at 1364–65 (emphasis in original). The Court further emphasized that statements received during an interrogation by law enforcement officers would fall squarely within the class of testimonial statements. *Id.* The Supreme Court stated that it used "interrogation" in a colloquial rather than legal sense but refused to further define it. *Id.* at 53 n. 4, 124 S.Ct. at 1365 n. 4. It found, however, that the recorded statements of Crawford's wife, taken in response to structured police questioning,

would qualify as interrogation "under any conceivable definition". *Id.* Furthermore, as Crawford did not have an opportunity to previously cross-examine his wife, the Supreme Court reversed and remanded for further proceedings. *Id.* at 68–69, 124 S.Ct. at 1374.

¶ 29 In the instant case, Appellant, relying upon the rule espoused in *Crawford,* contends that the Commonwealth violated his Sixth Amendment right to confrontation since the trial court permitted testimony regarding the out-of-court statements of Shaidla Geter and the victim. Preliminarily, we note that the United States Supreme Court decided *Crawford* during the pendency of the instant appeal. Accordingly, we must first determine whether Appellant may benefit from the *Crawford* decision.

¶ 30 In this Commonwealth, the "case law is clear . . . that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of adjudication up to and including the direct appeal." *Commonwealth v. Tilley,* 566 Pa. 312, 318, 780 A.2d 649, 652 (2001); *see Commonwealth v. Freeman,* 573 Pa. 532, 549–50, 827 A.2d 385, 395 (2003). To preserve a claim for review, the defendant must make a timely and specific objection to the introduction of the challenged evidence at trial. *Freeman,* 573 Pa. at 550, 827 A.2d at 396 (quotations omitted). In the instant case, we recognize that the *Crawford* decision did advance a new rule of law insofar as it overruled *Roberts.* Furthermore, our review of the record reveals that Appellant objected, throughout the trial, to the Commonwealth's introduction of the out-of-court statements. Accordingly, we may consider whether the decision in *Crawford* warrants reversal in the instant case.

¶ 31 Foremost, we must determine whether Shaidla Geter's out-of-court statements would fall under any of the three categories of testimonial statements outlined in *Crawford.* The record reveals that Shaidla made unsolicited statements, which qualified as excited utterances, to the officers when they exited the patrol car. Therefore, these statements would not qualify as "an extrajudicial statement[ ] . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Crawford,* 541 U.S. at 51–52, 124 S.Ct. at 1364. Next, we must consider whether Shaidla Geter's statements would constitute "*ex parte* in-court testimony or its functional equivalent." The Supreme Court included "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" within this categorization. Certainly, Shaidla's statements were not taken from an affidavit or prior testimony and were not the product of a custodial examination. A closer question exists, however, as to whether Shaidla would have reasonably expected her statements to have been used prosecutorially.

¶ 32 Since the decision in *Crawford,* a number of courts have grappled with the issue of whether excited utterances, made to police at the scene of the crime, would qualify as testimonial statements. In *Leavitt v. Arave,* 383 F.3d 809 (9th Cir. 2004), the victim called 911 to report that a prowler had entered her home. When the police arrived at the victim's home to investigate the crime, the police found the victim severely frightened and shaking. The victim again recounted that a prowler had entered her home and that she suspected the prowler was Leavitt. On the following night, the victim was murdered. At Leavitt's trial, the trial court permitted

the introduction of the victim's excited utterances, and Leavitt was convicted. On appeal, the Court concluded that the victim's statements were properly introduced as excited utterances and that the statements did not qualify as "testimonial" under *Crawford.* The Court explained:

> [The victim], not the police, initiated their interaction. She was in no way being interrogated by them but instead sought their help in ending a frightening intrusion into her home. Thus, we do not believe that the admission of her hearsay statements against Leavitt implicate "the principal evil at which the Confrontation Clause was directed[:] . . . the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.

*Id.* at 830 n. 22.

¶ 33 Some of our sister courts have also concluded that excited utterances, even made in response to informal police questioning at the scene of a crime, do not constitute testimonial statements. In *Hammon v. State,* 809 N.E.2d 945 (Ind.Ct. App.2004), the victim made a number of excited utterances to police officers at the scene of the crime, in response to preliminary police questions. In concluding that these excited utterances would not constitute testimonial statements, the Court stated:

> [T]he very concept of an "excited utterance" is such that it is difficult to perceive how such a statement could ever be "testimonial." The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful. To be admissible, an exited utterance must be unrehearsed and made while still under the stress of excitement from the starting event. The heart of the inquiry

is whether the declarants had the time for reflection and deliberation. An unrehearsed statement made without time for reflection or deliberation, as required to be an excited utterance, is not "testimonial" in that such a statement, by definition, has not been made in contemplation of its use in a future trial.

*Id.* at 952 (internal quotations and citations omitted). *Accord Fowler v. State,* 809 N.E.2d 960, 962 (Ind.Ct.App.2004) (finding that a victim's excited utterances, in response to an officer's initial questioning at the scene of the assault did not constitute testimonial evidence); *People v. Corella,* 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770 (Cal.Ct.App. September 16, 2004) (finding that a victim's excited utterances to a 911 operator and in response to an officer's preliminary questions at the scene of the crime did not constitute testimonial evidence because the statements were not in response to structured, formalistic police questioning and because the statements were made without reflection, not in contemplation of their testimonial use at a future trial); *Wilson v. State,* 2004 WL 2484835 (Tex.App. November 4, 2004) (finding that unsolicited excited utterances made to police at the scene of the crime did not constitute testimonial evidence under *Crawford* ).

¶ 34 We note, however, that our sister court's decision in *Lopez v. State,* 888 So.2d 693 (Fla.Dist.Ct.App.2004) reaches a contrary result. In *Lopez,* the police were dispatched to an apartment complex to investigate a reported kidnapping and assault. Upon the officers' arrival at the scene, they encountered the alleged victim in the parking lot. When the officers asked the victim what had happened, the victim responded that a man had abducted him in his own car at gunpoint. While answering these questions, the victim was nervous and appeared upset. The victim

then pointed the officers toward a gentle-man standing approximately twenty-five yards behind him (later identified as the appellant). A short time later, the victim informed the officers that the firearm used during the abduction was located in his car. The officers located the gun and ar-rested the appellant. When the case was called for trial, the victim failed to appear. The trial court subsequently concluded that the victim's statements at the scene would qualify as excited utterances. At the conclusion of the trial, the jury convict-ed the appellant. On appeal, our sister court concluded that the victim's state-ments did constitute excited utterances. Nevertheless, the court concluded that the statements were inadmissible pursuant to *Crawford.* Specifically, it stated:

[in determining whether the statement was made with the reasonable expecta-tion that it would be used in a prosecu-tion], the [*Crawford*] court focused on the purpose of the statement and its intended effect, and not the procedural context in which the statement was made.

A statement is more likely to have been made with the expectation that it would be used as evidence if it was given in response to questioning by a govern-ment official than it would if it had been volunteered. Emergency 911 calls offer a good illustration of this point. Many courts have concluded that a hearsay statement made in a 911 call is not testimonial, because the statement is not made in response to police questioning, and because the purpose of the call is to obtain assistance, not to make a record against someone.

A closer question is presented if the statement was made in response to po-lice questioning at the scene of the crime. It is not difficult to imagine a situation in which a declarant would make a statement to a police officer at the scene of a crime for the purpose of incriminating someone else. . . .

[The victim] was excited at the time he made the statement, and that also has a bearing on his expectation regarding the potential use of his statement in court. Some of the post-*Crawford* decisions have questioned whether a statement admitted in evidence under the excited utterance exception to the hearsay rule could ever be characterized as a testimo-nial statement. While this argument has some appeal at least on the surface, we do not think that excited utterances can be automatically excluded from the class of testimonial statements.

In our view, the findings necessary to support a conclusion that a statement was an excited utterance do not conflict with those that are necessary to support a conclusion that it was testimonial. A statement made in the excitement of a startling event is likely to be more reli-able given the fact that the declarant had little time to make up a story. But, under *Crawford,* reliability has no bear-ing on the question of whether a state-ment was testimonial. Some testimonial statements are reliable and others are not.

Whether a statement falls within the third category of testimonial statements identified in *Crawford* depends on the purpose for which the statement is made, not on the emotional state of the declarant. A spontaneous exclamation to a friend or family member is not likely to be regarded as testimonial. These statements [to a friend or family member] were not made to a person in authority for the purpose of accusing someone, or in the words of the Su-preme Court, to "bear testimony" against someone. In contrast, a startled person who identifies a suspect in a statement made to police officer at the

scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect. In this situation, the statement does not lose its character as a testimonial statement merely because the declarant was excited at the time it was made.

*Lopez,* at 699–700 (internal citations omitted).

¶ 35 The aforementioned cases illustrate some divergence on the issue of whether every excited utterance should fall outside the class of "testimonial" statements. Nevertheless, each of the aforementioned courts would seemingly permit the introduction of excited utterances which are volunteered by the declarant and which are made to obtain the assistance of police.

■ ¶ 36 Upon review, we are persuaded that, as in the instant case, an unsolicited excited utterance to police that is made to obtain assistance during the commission of a crime would not constitute a statement made in contemplation of prosecution. In such a situation, the declarant is not subject to police interrogation and is not influenced by reason or deliberation. The declarant volunteers this information in effort to remedy a perceived emergency, not to create a record against another for use in a future prosecution. In the instant case, since Shaidla made unsolicited excited utterances to the police during an ongoing assault upon her mother, we cannot conclude that Shaidla made the statements with the contemplation that they would be used in a future prosecution. Accordingly, we do not find that Shaidla's statements fall under the *"ex parte* in-court testimony or its functional equivalent" classification of testimonial statements articulated in *Crawford.*

■ ¶ 37 Finally, we conclude that Shaidla's statements to police would not qualify under the third classification of testimonial statements, namely, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 541 U.S. at 52. 124 S.Ct. at 1364. When Shaidla made her statements to police, the officers had not asked her a question and had not even stopped to record her statements. Since Shaidla's statements to police did not arise during the context of a formal, structured police interrogation, we cannot conclude that an objective witness would conclude that the statements would be available for use at a later trial. Rather, an objective witness would more likely conclude that the officers would utilize this information to intervene in the alleged assault and would later obtain a more formal statement from the witness. Accordingly, we do not find that Shaidla's out-of-court statements qualify as testimonial. Thus, Appellant's Sixth Amendment right of confrontation was not abridged by their admission.

¶ 38 Appellant also asserts that the victim's statements to police, which were made after the alleged assault, would qualify as "testimonial" statements under *Crawford.* We need not address this issue, however, since we have already concluded that the admission of the victim's statements, if erroneous, constituted harmless error. Finding no merit to Appellant's *Crawford* challenge, we affirm the judgment of sentence.

¶ 39 Judgment of sentence affirmed.