J-S18029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CORWIN HARRIS | : | |
| | : | |
| Appellant | : | No. 3025 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 23, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004435-2017

BEFORE: PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED JULY 16, 2021**

Corwin Harris (Appellant) appeals from the judgment of sentence entered on September 23, 2019, in the Court of Common Pleas of Philadelphia County, after he was convicted, by a jury, of burglary and a violation of the Uniforms Firearms Act, namely, persons not to possess firearms.[1] Appellant claims the evidence was insufficient to establish his conviction of VUFA § 6105 as a felony of the first degree, and the trial court erred or abused its discretion in admitting two hearsay statements. We affirm.

Following a March 2017 assault, Appellant was arrested and charged with burglary, VUFA § 6105, aggravated assault, terroristic threats, and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502; 6105(a) (hereinafter VUFA § 6105).

possession of an instrument of a crime (PIC)[2].  He proceeded to a bifurcated

trial.  The trial court recounted the testimony presented at trial as follows:

> Samuel Hodge, Jr. (hereinafter referred to as "[C]omplainant") testified [that o]n March 17, 2017, he lived with his girlfriend Erin Thomas and her son on the third floor of the three-story house located at 1330 West Jerome Street, Philadelphia, PA.  On that date, [A]ppellant also lived in the house although [C]omplainant could not state where in the house [A]ppellant lived. [At trial,] [C]omplainant testified that he did not remember giving a statement to the police following [an] assault [that day]. Complainant was then shown his March 18, 2017, statement taken by Detective [Jason] Tomon . . .  in an effort to refresh his recollection.
>
> In [the] statement [C]omplainant stated that . . . immediately following an argument he was having with his girlfriend, Ms. Thomas, [A]ppellant, who had lived on the second floor, front bedroom, for about eight (8) or nine (9) months, came up to the third floor with a gun in his hand, broke down his door and struck [C]omplainant eight (8) to twelve (12) times in the back of his head with a gun while threatening to kill [C]omplainant.  The police captured [A]ppellant and brought him back to the house and [C]omplainant identified [A]ppellant as the man who had just assaulted him.  In the statement, which was signed and initialed by [C]omplainant, . . .  he also stated that the back of his head was cut and was bleeding from being struck by the gun and that [A]ppellant did not have his permission to enter his room.  After reading the statement to the jury, [C]omplainant was then asked if the statement helped refresh his recollection of the assault and he responded "No."
>
> Complainant was then shown his testimony taken during [A]ppellant's May 22, 2017, preliminary hearing in a further attempt to refresh his recollection.  At [A]ppellant's preliminary hearing [C]omplainant identified [A]ppellant was living on the second floor, front bedroom of the boarding house where he also lived and as being the person who threatened to kill him while pistol-whipping the back of his head after breaking down the door

_____

[2] **_See_** 18 Pa.C.S. §§ 907(a), 2706(a)(1), 2702(a).

to his third floor room[.] Complainant described the gun as black with an[] extended magazine that fell off while [A]ppellant was . . . striking him with the gun.

[A]fter being questioned about the above testimony, [C]omplainant stated that he did not remember being at the preliminary hearing. Complainant testified that he did not remember being pistol-whipped by [A]ppellant or anything that happened on March 17, 2017. However, when asked, [C]omplainant testified that he was not saying that it didn't happen but only that he did not remember it happening.

\* \* \*

Philadelphia Police Officer Michael Chichearo testified [that he] and his partner . . . received a radio call at 10:15 p.m. of a person with a gun and a shooting at 1330 West Jerome Street. They arrived within minutes and at the entrance to the house he saw [C]omplainant bleeding from his head. Officer Chichearo then heard a female [Ms. Erin Thomas] screaming upstairs. As he went up the steps inside the house he observed [A]ppellant in the bathroom located on the second floor of the house. He observed through the open door [A]ppellant go behind the bathroom door near the bathtub while holding a black object in his hand. He then heard the sound of the metal object hitting the ground. He immediately told [A]ppellant to get out of the bathroom and after handing [A]ppellant off to another officer, [he] observed [A]ppellant "walk towards the front bedroom" on the second floor. Officer Chichearo then looked behind the bathroom door and didn't see anything on the floor and thought it was "weird" that nothing was there despite seeing the object in [A]ppellant's hand and hearing the loud sound of metal hitting the ground.

Officer Chichearo testified that when he got to the third floor and had an opportunity to observe[] Ms. Thomas, she was crying and screaming and having difficulty talking. Officer Chichearo testified that he was attempting to calm her down. Ms. Thomas began telling him what had happened and that during this time she was "still upset," and her voice was elevated and she was still crying. . . .

[Officer Chichearo recounted that] Ms. Thomas told [him] the male who lives on the second floor with the "crazy hair" [Appellant] kicked in their third floor door and pistol-whipped her boyfriend [Complainant]. Officer Chichearo then went back down to the second floor bathroom to look for a gun [A]ppellant may

- 3 -

have used to assault [C]omplainant. He then found a small door on the wall behind the tub which contained a shelf and plumbing pipes. This doorway was near where he had observed [A]ppellant earlier. Officer Chichearo opened this door and found a black and silver gun with an extended magazine and an assault rifle. . . .

Philadelphia Police Detective David Sherwood testified [that] he interviewed Samuel Hodge, Sr., the owner of the property where the assault occurred, and obtained his consent to search the property, specifically the second floor front bedroom where [A]ppellant resided. Detective Sherwood testified that Mr. Hodge told him that he owned the entire property located at 1330 West Jerome Street and that he rented the second floor, front bedroom to [A]ppellant. [The] search of [A]ppellant's bedroom [uncovered] a ballistic vest and live ammunition. . . .

Philadelphia Police Officer Daniel Martinez testified [that] he and his partner . . . proceeded in their vehicle to search for [A]ppellant [who had fled the scene]. They located [A]ppellant a few minutes later about a block away[.] They brought [A]ppellant back to the house and he was positively identified by [C]omplainant as the assailant.

Officer Martinez further testified that following the arrest of [A]ppellant he and his partner . . . completed both a "Pedestrian Vehicle Investigation" form and a Biographical Form[. The Biographical] form listed [A]ppellant's address as "1330 West Jerome Street, Second Floor, Front" and indicated that [A]ppellant lived there alone. Officer Martinez testified that [A]ppellant's address would have come from either [A]ppellant himself in responding to their question about where he lived or from identification he would have produced or . . . both.

Philadelphia Police Detective Jason Tomon . . . conducted an interview of [C]omplainant . . . on March 18, 2017, at 12:30 a.m. which was only a few hours after the attack. He described [C]omplainant as cooperative and acknowledged that he was there of his own free will. . . .

Detective Tomon testified that [C]omplainant was given an opportunity to read and change the statement and that he observed him sign the statement.

\* \* \*

- 4 -

By way of stipulation, the Commonwealth played for the jury a telephone call made by [A]ppellant to his sister on March 28, 2017[,] while he was incarcerated. During the call, [A]ppellant is heard saying that he "beat the dog shit out of that pussy [victim]".

[Appellant] presented no evidence in [his] case-in-chief.

Trial Ct. Op, 12/14/20, at 3-9 (record citations and headings omitted).

On June 21, 2019, the jury found Appellant guilty of burglary, but not guilty of aggravated assault, terroristic threats, and PIC. Following the verdict, Appellant proceeded immediately to a jury trial on the VUFA § 6105 offense, which was severed from the other charges at Appellant's request. The parties stipulated that Appellant had a prior felony conviction which precluded him from possessing a firearm, and incorporated the testimony from the burglary trial. *See* N.T., 6/21/19, at 27-28. After the trial court instructed the jury on the elements of the offense, the jury found him guilty of VUFA § 6105.

On September 23, 2019, the trial court sentenced Appellant to 10 to 20 years' imprisonment for burglary and a consecutive 10 to 20 years' imprisonment for VUFA § 6105. New counsel, James Lloyd, Esquire, was appointed, and filed a timely notice of appeal on October 22, 2019.[3] Appellant also complied with the court's order to file Pa.R.A.P 1925(b) statement.

On appeal, Appellant raises the following issues for our review:

_____

[3] On October 1 and 9, 2019, Appellant filed two *pro se* petitions for review pursuant to the Post Conviction Relief Act. *See* 42 Pa.C.S. §§ 9541-9546. On November 19th, the trial court dismissed the petitions as prematurely filed. *See* Order, 11/19/19.

I.    Is the evidence sufficient as a matter of law to sustain [A]ppellant's conviction for the crime of violations of the uniform firearms act, 18 Pa.C.S.A. § 6105 graded as a felony of the first degree, where the evidence must establish beyond a reasonable doubt that, "(A) at the time of the commission of a violation of [§ 6105] subsection (a), the person has previously been convicted of an offense under subsection (a); or (B) at the time of the commission of a violation of [§ 6105] subsection (a), the person was in physical possession or control of a firearm, whether visible, concealed about the person or within the person's reach", but there was no evidence presented at trial that [Appellant] was previously convicted of § 6105(a), and there was insufficient evidence to establish that the firearms recovered by police from inside a hidden panel behind a bathtub in a rooming house were in the physical possession of [Appellant] or within his reach at the time of his alleged constructive possession of those firearms?

II.   Did the trial court err and/or abuse its discretion when it permitted the Commonwealth to present hearsay testimony from Erin Thomas where:  she did not appear at trial; the challenged statement was made after she calmed down and was not an excited utterance; and where admission of this evidence was not harmless error as it was unduly prejudicial to [Appellant] where the only eyewitness to testify regarding an alleged burglary and assault gave inconsistent testimony and stated that he did not remember the incident at all during trial?

III.  Did the trial court err and/or abuse its discretion when it permitted the Commonwealth to present hearsay testimony from Samuel Hodge, Sr., where:  he did not appear at trial; the challenged statement was that [Appellant] was the lessee of an apartment where incriminating contraband was found; this hearsay was offered for the truth of the matter asserted and does not fall within any hearsay exception; and where admission of his evidence was not harmless error as it was unduly prejudicial to [Appellant] where [Appellant's] ownership interest, if any, of the room in question was contested at trial by the defense?

Appellant's Brief at 5-6.

In his first issue, Appellant avers the evidence was insufficient to establish a conviction of VUFA § 6105 as a felony of the first degree. Appellant argues that the evidence established that he did not physically possess the firearms recovered by police, as the weapons were discovered in "a hidden area within the common bathroom in a rooming house." Appellant's Brief at 28.

> Our review of a sufficiency challenge is well-settled:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

To support a conviction of VUFA § 6105, the Commonwealth must establish that Appellant was convicted of an offense enumerated in subsection (b) of the statute, and possessed, used, controlled, sold, transferred, or

manufactured or obtained a license to use, control, sell, transfer, or manufacture a firearm. *See* 18 Pa.C.S. § 6105(a)(1). This Court has held:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.

*Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) (citation omitted).

Here, Appellant's specific claim focuses on the grading of his conviction. Pursuant to Section 6105(a.1):

> (1) Except as provided under paragraph (1.1), a person convicted of a felony enumerated under subsection (b) . . . who violates subsection (a) commits a felony of the **second degree**.
>
> (1.1) The following shall apply:
>
> > (i) A person convicted of a felony enumerated under subsection (b) . . . who violates subsection (a) commits a felony of the **first degree** if:
> >
> > > (A) at the time of the commission of a violation of subsection (a), the person has previously been convicted of an offense under subsection (a); or
> > >
> > > (B) at the time of the commission of a violation of subsection (a), the person was in physical possession or control of a firearm, whether visible, concealed about the person or within the person's reach.

18 Pa.C.S. § 6105(a.1)(1)-(1.1)(i)(A)-(B) (emphasis added).

In the present case, Appellant concedes that his prior criminal record prohibited him from possessing a firearm pursuant to § 6105(a). N.T., 6/21/19, at 28. However, he contends the evidence presented at trial was insufficient to establish that he physically possessed the firearm recovered by police to grade his offense as a first degree felony.[4] Appellant's Brief at 28. He argues that the handgun recovered in the bathroom does not match the one described by Complainant. *Id.* at 30. Appellant notes that, in his statement to police, Complainant described the gun as a "black semi auto handgun," while the firearms expert testified the handgun recovered from the bathroom was a "green and stainless steel finish with a four-and-a-half-inch barrel" fitted with a brown grip sleeve. *Id.* at 29-30 (emphasis omitted). Moreover, the detective who recovered the weapon chose to not process it for the presence of DNA and/or fingerprint evidence. *Id.* at 28-29.

Furthermore, Appellant emphasizes that the trial court instructed the jury on the difference between actual possession and constructive possession with respect to VUFA § 6105, stating: "A person can be guilty of possessing an item **even when he or she is not holding it, touching it, or in the same area of the item**, that type of possession is what the law calls constructive possession." *Id.* at 31 (some emphasis omitted); N.T., 6/21/19 at 31. However, he notes that the jury was not required to make a specific finding as to whether he **physically** possessed or **constructively** possessed

_____

[4] The Commonwealth did not assert that Appellant had a prior VUFA § 6105 conviction. *See* 18 Pa.C.S. § 6105(a.1)(1.1)(i)(A).

the gun in question. *Id.* at 31-32. Appellant avers that, while constructive possession can support a conviction for VUFA § 6105 as a felony of the **second** degree, it cannot support a conviction for VUFA § 6105 as a felony of the **first** degree, which requires proof that, *inter alia*, "the person was in physical possession or control of a firearm, whether visible, concealed about the person or within the person's reach." *Id.* at 32-34; 18 Pa.C.S.A. § 6105(a.1)(1.1)(i)(B). Thus, Appellant argues the "default grading" for a § 6105 violation is a felony of the second degree, and "this would certainly apply to a violation of § 6105 premised upon a theory of constructive possession." *Id.* at 33. Because the jury "did not make a finding that [he] was in physical possession of a firearm," Appellant insists the evidence was insufficient to support his conviction of VUFA § 6105 as a first degree felony. *Id.* at 38. Furthermore, since he was only charged with the crime as a first degree felony, Appellant contends his conviction should be reversed and his sentence on that count vacated. *Id.* at 39.

The trial court found that the Commonwealth proved Appellant was in physical possession of the firearm he used to pistol-whip Complainant through the testimony of the Complainant (via the admissible statements given to the police) and statements given by his girlfriend, Ms. Thomas. Trial Ct. Op. at 13. Moreover, the trial court also found that the Commonwealth proved Appellant constructively possessed the firearm recovered from the second floor bathroom, following the assault. *Id.* The trial court specifically cited Officer Chichearo's testimony that "he observed a black object in [A]ppellant's

- 10 -

hand and then heard the sound of metal hitting the ground when [A]ppellant dropped the object behind the bathtub where he was hiding." ***Id.*** at 14.

Upon our review of the record, we agree the evidence was sufficient for the jury to determine beyond a reasonable doubt that Appellant had actual physical control over the handgun recovered from the bathroom. Both Complainant and his girlfriend, Ms. Thomas, provided statements to the police detailing how Appellant beat Complainant with the firearm, demonstrating his physical possession of the weapon. N.T., 6/19/19, at 56-57, 83. Officer Chichearo also testified that he observed a black object in the Appellant's hand while Appellant was in the bathroom, and, afterwards, heard the sound of metal hitting the ground when Appellant dropped this object – once again, demonstrating Appellant's physical possession of the weapon. ***Id.*** at 108-09. Indeed, the officer explained:

> When I observed the gun in the false bottom -- which is this high up, and it's empty to the bottom. When I observed the handgun and the other gun in the area of the pipes, if he would have dropped it in there, it would have made that noise of the metal.

***Id.*** at 109. Thus, when viewed in the light most favorable to the Commonwealth, the evidence demonstrates that either Appellant "was in physical possession" of the firearm or the firearm was "within [his] reach". 18 Pa.C.S. § 6105(a.1)(1.1)(i)(B).

We also conclude Appellant's concern regarding the court's jury instruction is of no moment. Although the court did instruct the jury it could find Appellant guilty of "constructive possession" even if he was not "in the

same area" as the weapon, the testimony established that Appellant was not only "in the same area" as the weapon, but that he physically possessed the handgun when he (1) beat Complainant with the gun and (2) hid it in the bathroom, where it was recovered a short time later. *See* N.T., 6/21/19, at 31, 57, 83, 108-09.

In his second and third issues, Appellant argues that the trial court abused its discretion by admitting two hearsay statements.[5] "A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013). An abuse of discretion occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. Super 2000) (citation omitted). Even when the trial court improperly admits certain evidence, this Court may find the error is harmless if:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

---

5 We note Appellant properly objected to the challenged statements at trial. *See* N.T., 6/19/19, at 80-81, 126-128.

***Commonwealth v. Stallworth***, 781 A.2d 110, 120 (Pa. 2001) (citation omitted).

The Pennsylvania Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) the party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. Rule 802 also provides that hearsay statements are generally inadmissible. ***See*** Pa.R.E. 802. However, Rule 803 lists certain exceptions to the rule against hearsay, regardless of whether the declarant is available as a witness. ***See*** Pa.R.E. 803. One of these exceptions is the "excited utterance" exception. Pursuant to this exception, "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is admissible. Pa.R.E. 803(2).

Appellant first avers the trial court abused its discretion in permitting the Commonwealth to present hearsay testimony from Erin Thomas under the "excited utterance" exception. Appellant's Brief at 40-42. Appellant claims that, because the officer testified Ms. Thomas had "calmed down," her statements were not a "spontaneous reaction" to a startling event. ***Id.*** at 44-45 (emphasis omitted); N.T., 6/19/19, at 80. Appellant maintains that the admission of the out-of-court statement from Ms. Thomas was "unduly prejudicial" and "deprived [him] of a fair trial." Appellant's Brief at 46.

When considering the excited utterance exception, there is no bright line rule regarding the amount of time that may elapse between the declarant's

experience and their statement. **Commonwealth v. Gray**, 867 A.2d 560, 570 (Pa. Super. 2005) (citations omitted). The crucial question, regardless of the time lapse, is "whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." **Id.** at 570-71. Furthermore, the spontaneity of the excited utterance "is the source of reliability and the touchstone of admissibility." **Id.** at 571 (citation omitted).

Here, based on Officer Chichearo's testimony, the trial court found that Ms. Thomas was "still upset" when she related her account of the assault to him. Trial Ct. Op., 12/14/20, at 11. The court explained that Ms. Thomas "had just been confronted by something terribly shocking and startling" — Appellant's pistol-whipping of her boyfriend — and relayed the necessary information to Officer Chichearo "while still under the stress of that excitement." **Id.**

We agree that, when Ms. Thomas spoke to Officer Chichearo, she remained under a "nervous excitement" from the startling event of witnessing her boyfriend being physically assaulted just moments before. Although Appellant argues that Ms. Thomas' statements were made in response to the officer's direct questioning, as opposed to spontaneous remarks, we note that a hearsay statement may be admissible as an excited utterance "even if it was the product of questioning." **Commonwealth v. Sherwood**, 982 A.2d 483, 496 (Pa. 2009). Thus, the trial court did not abuse its discretion when it

admitted Ms. Thomas' statement as an excited utterance pursuant to Pa.R.E. 803(2).

Appellant also argues the trial court abused its discretion in permitting the Commonwealth to present a hearsay statement from Samuel Hodges, Sr., that he rented the second floor bedroom to Appellant. *See* N.T., 6/19/19, at 126-128. Appellant insists there is no hearsay exception that would permit this out of court statement to be presented at trial. Appellant's Brief at 47. He notes that the officers testified there was "no proof of residence or other evidence . . . found in [the second floor front] bedroom which indicated it was [A]ppellant's room." *Id.* at 48-49; N.T., 6/19/19, at 131-132, 134-135. Appellant emphasizes the only evidence establishing his residence at this location came from the hearsay statement of Hodge, who "did not provide the detective with a lease or any other documentation" to support his statement. Appellant's Brief at 49. Thus, Appellant maintains the admission of this out of court statement was "unduly prejudicial" and "deprived [him] of a fair trial." *Id.*

The trial court opined that it "permitted this testimony as . . . part of the police investigation into the burglary and assault." Trial Ct. Op. at 12. Moreover, the court emphasized that the information in Hodge's statement, as to where Appellant resided, was already before the jury, since Complainant told police Appellant lived on the second floor, and Officer Martinez testified that Appellant's Biographical Form listed Appellant's address as the second floor front bedroom of the rooming house. N.T., 6/19/21, at 43, 55, 150-53.

We agree that, in the present case, the hearsay statement of Samuel Hodges, Sr. was "merely cumulative of other untainted evidence" that was "substantially similar." **Commonwealth v. Stallworth**, 781 A.2d 110, 120 (Pa. 2001). Thus, even if the statement was improperly admitted, Appellant was not prejudiced. Accordingly, Appellant's objection to the admission of this hearsay testimony is lacking in merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2021