J-A14004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TED LEROY FOSCO | : | |
| | : | |
| Appellant | : | No. 2130 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 24, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000862-2021

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED JULY 23, 2024**

Ted Leroy Fosco appeals from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, following his convictions of five counts each of aggravated assault – attempt to cause serious bodily injury,[1] aggravated assault – attempt to cause serious bodily injury with a deadly weapon,[2] terroristic threats,[3] recklessly endangering another person,[4] and simple assault;[5] and one count each of robbery,[6] discharge of a firearm into

---

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] *Id.* at § (a)(4).

[3] *Id.* at § 2706(a)(1).

[4] *Id.* at § 2705.

[5] *Id.* at § 2701(a)(3).

[6] *Id.* at § 3701(a)(1)(ii).

an occupied structure,[7] criminal mischief – damage to property,[8] firearms not to be carried without a license,[9] possession of weapon,[10] resisting arrest,[11] disorderly conduct,[12] and possession of drug paraphernalia.[13]  After careful review, we affirm on the well-written opinion authored by the Honorable Gary B. Gilman.

We adopt the trial court's full factual summary as set forth in its opinion. *See* Trial Court Opinion, 11/30/23, at 4-9.  Briefly, Fosco was a guest at the Bensalem Comfort Inn and Suites on January 27, 2021, when he got into a dispute with the hotel's staff over his lack of funds to extend his stay.  Fosco became irate and began destroying hotel property.  Staff and other hotel guests asked Fosco to stop, but Fosco pulled out a gun and began firing his weapon.  Police responded and, eventually, were able to take Fosco into custody.  Fosco was charged, *inter alia*, with the above-mentioned offenses.[14]

---

[7] *Id.* at § 2701.1(a).

[8] *Id.* at § 3304(a)(5).

[9] *Id.* at § 6106(a)(1).

[10] *Id.* at § 907(b).

[11] *Id.* at § 5104.

[12] *Id.* at § 5503(a)(4).

[13] 35 P.S. § 780-113(a)(32).

[14] Fosco was also charged with two counts of attempted murder but was acquitted of that offense at trial.

On October 24, 2022, Fosco proceeded to a four-day jury trial, after which he was convicted of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On March 24, 2023, the trial court conducted a sentencing hearing. The full breakdown of Fosco's sentences are detailed in the trial court's opinion. **See id.** at 9-10. Fosco was sentenced to an aggregate term of 11 to 22 years' incarceration.

On April 3, 2023, Fosco filed two post-sentence motions, which the trial court denied. Fosco filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Fosco now raises the following claims for our review:

> [1.] Did the trial court abuse its discretion in admitting statements made by Matthew Mason that were inadmissible hearsay and not excited utterances, where [] Mason calmly responded to police questioning after leaving and returning to the scene of the incident at least fifteen minutes after the startling event, under circumstances which indicate that his statements were not spontaneous but rather the product of reflection upon past events?
>
> [2.] Did the trial court err in applying a test explicitly overruled by the Supreme Court of the United States in **Crawford** [**v. Washington**, 541 U.S. 36 (2004),] and admitting statements made by [] Mason—even assuming they would have otherwise been admissible under an exception to the hearsay rule—where the statements were testimonial, [] Mason was [] available, and the defense had no prior opportunity to cross-examine him such that the admission of the statements violated [Fosco]'s constitutional right to confront witnesses against him?

Brief for Appellant, at 8.

- 3 -

The trial court, in its opinion, addressed both of Fosco's appellate claims together and we do so as well, as the claims are related. In both claims, Fosco contends that Mason's statements to the responding police officers were hearsay without an exception and that the trial court erred in admitting those statements without Mason testifying. ***See id.*** at 15-34. Fosco argues that Mason was not "excited" when he spoke to the officers, but rather calm. ***See id.*** at 17-18. Fosco asserts that, after Fosco had already begun shooting, Mason left the hotel and returned later to speak with the officers. ***See id.*** at 18-19. Fosco further contends that, by the time Mason returned to the hotel, the dangerous condition had been alleviated because police had secured the hotel and Fosco had been taken into custody. ***Id.*** at 18-20. Additionally, Fosco argues that the trial court, at trial, relied upon previously overturned case law, and that the error is not harmless. ***See id.*** at 23-34.

It is well-established that "[a] trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and will not be reserved absent a clear abuse of that discretion." ***Commonwealth v. Manley***, 985 A.2d 256, 265 (Pa. Super. 2009) (citation omitted). "An abuse of discretion is not a mere error of judgment but, rather, involves partiality, prejudice, bias, ill-will, or manifest unreasonableness." ***Commonwealth v. Hardy***, 918 A.2d 766, 776 (Pa. Super. 2007) (citation omitted).

Hearsay is an out-of-court statement introduced for the truth of the matter asserted. ***See Commonwealth v. Fitzpatrick***, 255 A.3d 452, 458 (Pa. 2021). While hearsay statements are generally inadmissible, a party may

present otherwise inadmissible hearsay under the excited utterance exception provided in Pa.R.E. 803, which defines an excited utterance as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). This Court has explained:

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit. Rather each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." The crucial question, regardless of the lapse of time, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

*Commonwealth v. Gore*, 396 A.2d 1302, 1305 (Pa. Super. 1978) (citations omitted).

After reviewing the record on appeal, the applicable standard of review, the relevant case law, and the parties' briefs, we affirm on the basis of the trial court's thorough and well-reasoned opinion.[15] *See* Trial Court Opinion, 11/30/23, at 1-19. Consequently, we afford Fosco no relief. The parties are

---

[15] To the extent that Fosco argues the trial court relied upon previously overturned case law at the time of trial, this argument is of no moment. This court may affirm on any basis, and the reasoning provided in the trial court's opinion, which we have adopted, sufficiently address Fosco's claim. *See Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) ("an appellate court has the ability to affirm a valid judgment or verdict any reason appearing as of record"); *see also* Trial Court Opinion, 11/30/23, at 13-19. Because we conclude that the trial court's determination, in its opinion, is supported by the record, we affirm on this basis and, consequently, Fosco is not entitled to relief.

directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment of sentence affirmed.

Lane, J., Joins this Memorandum.

Stabile, J., Concurs in the Result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/23/2024

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** : | |
| **v.** : | **No. CP-09-CR-0000862-2021** |
| : | |
| **TED LEROY FOSCO** : | |

## I.     INTRODUCTION

On January 27, 2021, Ted Leroy Fosco ("Appellant") entered the Bensalem Comfort Inn and Suites and, along with a female companion, rented a room for the night. The next morning, inexplicably agitated, Appellant walked to the hotel lobby and proceeded to violently terrorize guests and employees of the hotel. Appellant physically destroyed much of the lobby, despite numerous requests from staff to stop. When two hotel guests attempted to approach Appellant, he removed a firearm from his pocket and shot at them, whereupon they fled the building. Two employees of the Comfort Inn watched Appellant fire his gun through a live-feed camera, huddled in an office for safety. Appellant also attempted to rob a teenager and his family. When the teenager escaped to the safety of his family's hotel room, Appellant discharged his firearm outside the door of their room, while the family hid from the attack.

Appellant was identified by law enforcement officers as the individual who perpetrated these crimes, and accordingly he was charged with multiple offenses under criminal bill of information: CP-09-CR-0000862-2021. Specifically, Appellant was charged with two counts of Criminal Attempt – Criminal Homicide;[1] five counts of

---

[1] 18 Pa.C.S.A. § 901(a)

1

Aggravated Assault – Attempts to Cause Serious Bodily Injury or Causes Injury with Extreme Indifference, a felony of the first degree;[2] one count of Robbery – Threat of Immediate Serious Injury, a felony of the first degree;[3] five counts of Aggravated Assault – Attempts to Cause or Causes Bodily Injury with a Deadly Weapon, a felony of the second degree;[4] one count of Attempted Discharge of a Firearm into an Occupied Structure, a felony of the third degree;[5] one count of Criminal Mischief – Damage to Property, a felony of the third degree;[6] one count of Firearms Not to be Carried Without a License, a felony of the third degree;[7] five counts of Terroristic Threats With Intent to Terrorize Another, a misdemeanor of the first degree;[8] one count of Possession of

---

(a) **Definition of attempt.**--A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

[2] 18 Pa.C.S.A. § 2702(a)(1)
(a) **Offense defined.**
A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

[3] 18 Pa.C.S.A. § 3701(a)(ii)
(a) **Offense defined.**
(1) A person is guilty of robbery if, in the course of committing a theft, he:
...
(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

[4] 18 Pa.C.S.A. § 2702(a)(4)
(a) **Offense defined.**--A person is guilty of aggravated assault if he:
(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

[5] 18 Pa.C.S.A. § 2707.1(a)
(a) **Offense defined.**--A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure.

[6] 18 Pa.C.S.A. § 3304(a)(5)
(a) **Offense defined.**--A person is guilty of criminal mischief if he:
(5) intentionally damages real or personal property of another[.]

[7] 18 Pa.C.S.A. § 6106(a)(1)
(a) **Offense defined.**--
(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

[8] 18 Pa.C.S.A. § 2706(a)(1)

2

Weapon, a misdemeanor of the first degree;[9] five counts of Recklessly Endangering Another Person, a misdemeanor of the second degree;[10] five counts of Simple Assault, a misdemeanor of the second degree;[11] one count of Resisting Arrest/Other Law Enforcement, a misdemeanor of the second degree;[12] one count of Disorderly Conduct Hazardous/Physically Offensive, a misdemeanor of the third degree and;[13] one count of Use or Possession of Drug Paraphernalia, a misdemeanor.[14]

After a four day jury trial was conducted the week of October 24, 2022, Appellant was convicted of two counts of Aggravated Assault – Attempts to Cause Serious Bodily Injury or Causes Injury with Extreme Indifference; one count of Robbery – Threat of

---

**(a) Offense defined.**–A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
    (1) commit any crime of violence with intent to terrorize another[.]
[9] 18 Pa.C.S.A. § 907(b)
**(b) Possession of weapon.**–A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.
[10] 18 Pa.C.S.A. § 2705.
A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

[11] 18 Pa.C.S.A. § 2701(a)(3)
**(a) Offense defined.**–Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
    (3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]
[12] 18 Pa.C.S.A. § 5104. A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.
[13] 18 Pa.C.S.A. § 5503(a)(4).
**(a) Offense defined.**–A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:     ...
    (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
[14] 35 P.S. § 780-113(a)(32)
**(a)** The following acts and the causing thereof within the Commonwealth are hereby prohibited:
    (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

Immediate Serious Injury; two counts of Aggravated Assault – Attempts to Cause or Causes Bodily Injury with a Deadly Weapon; one count of Criminal Attempt – Discharge of a Firearm into an Occupied Structure; one count of Criminal Mischief – Damage to Property; one count of Firearms Not to be Carried Without a License; five counts of Terroristic Threats With Intent to Terrorize Another; one count of Possession of a Weapon; five counts of Recklessly Endangering Another Person; three counts of Simple Assault; one count of Resisting Arrest/Other Law Enforcement; one count of Disorderly Conduct Hazardous/Physically Offensive and; one count of Use/Possession of Drug Paraphernalia.

On March 24, 2023, Appellant was sentenced to an aggregate term of incarceration in a state correctional facility of not less than 11 years nor more than 22 years. On April 3, 2023, Appellant filed Post-Sentence Motions, which were denied on July 20, 2023.

Appellant now appeals from the Court's March 24, 2023, Judgment of Sentence. Accordingly, we file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 27, 2021, Bensalem Township police received calls warning of an armed man in the lobby of the Bensalem Comfort Inn and Suites, N.T. 10/25/2022, p. 58. Nancy Alvarado ("Ms. Alvarado") was employed as a housekeeper at the hotel on that date. N.T. 10/25/2022, pp. 94-95. Appellant had asked Ms. Alvarado to extend his stay at the Comfort Inn and Suites, but he apparently lacked proper payment to do so,

4

which infuriated him. N.T. 10/25/2022, pp. 97-98. Appellant proceeded to destroy hotel property in the lobby. N.T. 10/25/2022, p. 101.

Appellant threw the credit card machine and hand sanitizer dispenser to the ground. N.T. 10/26/2022, p. 180. He also threw the computer from the front desk and began to damage the couch located in the lobby. N.T. 10/26/2022, p. 180. Appellant's behavior continued to escalate, as he threw a podium to the ground and then attempted to pull a door off of its track. N.T. 10/26/2022, pp. 141-42. Appellant ripped a phone off the desk.[15] N.T. 10/26/2022, p. 144.

Ms. Alvarado heard others ask Appellant to stop, who replied that "he [Appellant] ha[d] something for them." N.T. 10/25/2022, p. 102. At that moment, Appellant's behavior turned potentially deadly. While Ms. Alvarado hid under a table in the office, she heard two gunshots. N.T. 10/25/2022, p. 104. Ms. Alvarado was also able to see Appellant through a video camera in the office where she hid. N.T. 10/25/2022, p. 115. She was able to see Appellant "...[take] out from his clothing the gun that he discharged." N.T. 10/25/2022, p. 115. Ms. Alvarado testified that two subjects who appeared to be in harms way ran as a "puff of smoke" appeared from Appellant's firearm. N.T. 10/25/2022, pp. 115-116.

Appellant had fired at and terrorized two men, Matthew Mason ("Mr. Mason") and Brett Evett ("Mr. Evett") Mr. Mason and Mr. Evett were construction workers from Alabama who were staying at the Comfort Inn as of January 27, 2021.[16] N.T. 10/26/2022, p. 68. Upon observing the property damage caused by Appellant, Mr.

---

[15] Appellant testified at trial that he had no recollection of "knocking over furniture" in the lobby. N.T. 10/27/2022, p. 64

[16] Appellant testified he had no recollection of meeting Mr. Mason or Mr. Evett. N.T. 10/27/2022, p. 42.

5

Mason approached him and implored him to calm down, N.T. 10/25/2022, p. 179, while Mr. Evett picked up the trash can Appellant had thrown to the ground in the lobby. N.T. 10/26/2022, p. 146. Then, as Ms. Alvarado observed through the video feed, Mr. Mason began to retreat as Appellant lifted his firearm and shot in his direction and the direction of Mr. Evett. N.T. 10/26/2022, pp. 148-149. As Mr. Mason and Mr. Evett retreated out the exit door, Appellant began to chase after them. N.T 10/26/2022, p. 149.

Officer Bailey of the Bensalem Police Department testified that when he arrived on the scene, Mr. Mason was screaming that "he [Appellant] has a gun, he has a gun, he has a gun." N.T. 10/25/2022, pp. 170-71. Later, once Appellant was removed from the scene, Officer Bailey again spoke with Mr. Mason, who first inquired if everyone was safe, N.T. 10/25/2022, p. 180, and subsequently told Officer Bailey that he had approached Appellant and attempted to encourage him to calm down, as Appellant was demanding money and screaming at someone. N.T. 10/25/2022, p. 179. Appellant then said to Mr. Mason that "he [Appellant] was going to kill somebody" and pulled out his firearm. N.T. 10/25/2022, p. 179.

On the same day, Appellant also terrorized Matthew Elliot, a teenager who was staying with his father and brother at the Comfort Inn, N.T. 10/25/2022, pp. 130-131. Matthew Elliot testified that on January 27, 2021, he was in the hotel lobby when Appellant walked fast toward him, hand in his pocket, and repeatedly asked if Matthew Elliot worked there. N.T. 10/25/2022, pp. 135-136. After Matthew Elliot said he did not work there, Appellant said, "give me everything you got or I'm going to fucking kill you." N.T. 10/25/2022, pp. 135-36.[17] Matthew Elliot ran into his family's hotel room and locked

---

[17] Appellant apparently chose not to threaten or attack several other individuals in the lobby with whom Appellant interacted on January 27, 2021. N.T. 10/26/2022, pp. 165-67.

the door, whereupon Appellant stood outside the door, yelling. N.T. 10/25/2022, pp. 136-37. Appellant stated, "okay, have it your way then" and fired his gun outside of the Elliot family's hotel room door. N.T. 10/25/2022, p. 137. Matthew Elliot's father, who suffered from severe health challenges, remained on his hotel room bed, unable to move, N.T. 10/25/2022, p. 138, and the brothers hid behind the bed while Appellant was outside their door. N.T. 10/25/2022, p. 137. Appellant remained outside their door, and stated, "I'm going to take all your fucking money and then I'm going to burn this piece of shit place to the ground." N.T. 10/25/2022, p. 137. Appellant himself testified at trial that, "...once I realized that I literally shot into the floor, I said to myself, what the -- are you doing? And at that point I was just at a loss."[18] N.T. 10/27/2022, p. 44.

After Appellant's encounters with Mr. Mason, Mr. Evett, and Matthew Elliot, Officer Bailey and other Bensalem officers approached Appellant to take him into custody. N.T. 10/25/2022, p. 64. Appellant started to scream vulgarities at the officers, and he stated, "...you don't want to see my gun." N.T. 10/25/2022, p. 64. Appellant refused to listen to Bensalem Township Police commands, and officers had to attempt to physically restrain him. N.T. 10/25/2022, p. 66. The officers struggled and ultimately were able to wrestle Appellant to the ground, but Appellant refused to comply throughout the arrest, and refused to put his hands behind his back. N.T. 10/25/2022, p. 67. Appellant was increasingly agitated and was therefore tased three times, without much success at subduing him. N.T. 10/25/2022, p. 67. During the scuffle, Appellant continued to reach toward his waistband. N.T. 10/25/2022, p. 68. Officer Bailey described the scene: "...people were trying to hold him down. People were trying to hold

---

[18] Later in his testimony, Appellant categorized this as a "moment of clarity," and stated he had no further recollection.

7

a leg. People were trying to get his arms. People were trying to get his hands behind his back." N.T. 10/25/2022, p. 70. Almost ten officers were required to subdue Appellant. N.T. 10/26/2022, p. 87. Once Appellant was subsequently handcuffed, a firearm was found in his pocket. N.T. 10/25/2022, p. 72. Appellant was subsequently able to comprehend commands and he was taken out of the Comfort Inn and to the Bensalem police station. N.T. 10/26/2022, p. 208.

As a result of the Bensalem Police Department's subsequent investigation, spent bullet jackets were located at the end of the Comfort Inn hallway, on the lobby level, along with a spent bullet jacket in the lobby. N.T. 10/25/2022, p. 75; See Exhibit #C-4. Lieutenant Kolman, a Special Weapons and Tactics (SWAT) member for Bensalem Township, N.T. 10/26/2022, pp. 8-10, subsequently tested the firearm recovered from Appellant and found it to be operable. N.T. 10/26/2022, p. 14; See also Exhibit C-14; Exhibit C-14A. Lieutenant Kolman testified that when the firearm was recovered from Appellant, there were "...two spent shell casings and two live rounds...." N.T. 10/26/2022, p. 20.

Police Sergeant Tropiano testified that the Comfort Inn lobby area had chairs and tables toppled over when he arrived. N.T. 10/26/2022, p. 25. Additional items were overturned and thrown about directly in front of the hotel clerk's desk. N.T. 10/26/2022, p. 26. Sergeant Tropiano testified that there was a hole in the carpet and a bullet located outside of Room 131, where Matthew Elliot and his family stayed. N.T. 10/26/2022, pp. 31-32; See Exhibit C-16; Exhibit C-18; Exhibit C-19. The bullet had ricocheted off the bottom of the doorway leading to Room 131. N.T. 10/26/2022, p. 39.

Sergeant Tropiano also inspected the hotel room where Appellant had been staying. N.T. 10/26/2022, p. 52. Inside the hotel room, Sergeant Tropiano recovered numerous cards registered to Appellant. N.T. 10/26/2022, p. 52. A magazine for .25 caliber rounds and an iPhone was also discovered during Sergeant Tropiano's investigation. N.T. 10/26/2022, p. 53. Specific to the drug charges in this case, Sergeant Tropiano testified that there was a green and purple trash can vial within the room and a glass pipe recovered. N.T. 10/26/2022, p. 53. Based on his experience and training with regard to drugs and drug paraphernalia, Sergeant Tropiano testified that "the two plastic trash can vials... are commonly used to store narcotics." N.T. 10/26/2022, p. 55; See Exhibit C-23. As to the glass pipe, Sergeant Tropiano testified that the glass pipe was "mostly used for narcotics" and that individuals commonly smoke narcotics out of the glass pipe. N.T. 10/26/2022, p. 57.

Appellant was accordingly charged under criminal bill of information: CP-09-CR-0000862-2021 with the myriad aforementioned charges related to the alleged attempted murders, aggravated assaults, and other criminal offenses which arose out of Appellant's actions on January 27, 2021.[19] On October 24, 2022, a four-day jury trial commenced, and Appellant was convicted of the aforementioned charges.[20] On March 24, 2023, as to counts 6 and 7 of Criminal Information 0862-2021, this Court sentenced Appellant to a period of incarceration on each count of not less than 3.5 years nor more than 7 years in a state correctional facility, to run consecutively to one another. As to count 8, Appellant was sentenced to no less than 2 years to no more than 4 years in a

---

[19] See aforementioned charges for criminal bill of information CP-09-CR-0000862-2021.
[20] See pages 2-3 of this Opinion for specific charges of which Appellant was found guilty. He was acquitted of the attempted murders and several other charges.

9

state correctional facility, to run consecutive to the sentence imposed at count 7. As to count 14, Appellant was sentenced to no less than 1 year to no more than 2 years in a state correctional facility, to run consecutive to the sentence imposed on count 8. As to Count 16, Appellant was sentenced to not less than 12 months nor more than 24 months in a state correctional facility, with the sentence to run consecutively to the sentence imposed on Count 14. Appellant was given credit for time served, which was calculated from January 28, 2021, to March 24, 2023. This Court ordered no further penalty on counts 9, 13, 15, and 17-34. Appellant was sentenced, then, to an aggregate term of incarceration in a state correctional facility of not less than 11 years nor more than 22 years.

On April 3, 2023, Appellant filed two "Post-Sentence Motions": a "Motion for Reconsideration of Sentence" and a "Motion as to Trial Issues." On July 20, 2023, this Court denied both Motions without a hearing, finding that they were without merit, and that they failed to delineate any averments which raised material issues not previously or properly considered at the time of the relevant proceedings. On August 18, 2023, Appellant timely filed a Notice of Appeal with the Pennsylvania Superior Court. Accordingly, we file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

### III. APPELLANT'S STATEMENT OF MATTERS COMPLAINED OF ON APPEAL PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(b)

On August 28, 2023, this Court issued its 1925(b) Order. On September 18, 2023, Appellant filed a timely Statement of Matters Complained of on Appeal, which is

reproduced, *verbatim*, below. In his Statement, Appellant alleges the following 16 claims of alleged error for this Court to address:

1. The Trial Court erred in permitting Officer Steven Bailey to testify to the hearsay statements made by Mr. Mason that "he has a gun, he has a gun" as the statement was hearsay, did not constitute an excited utterance or any other exception to the rule against hearsay, in violation of Appellant's right to due process of law and to confront and cross-examine the witnesses against him as guaranteed to him by the United States and Pennsylvania Constitutions.

2. The Trial Court erred in permitting Officer Steven Bailey to testify to hearsay statements made by Mr. Mason that Appellant was demanding money and said he was going to kill someone as these statements were hearsay, did not constitute an excited utterance, and did not fall within any other exception to the rule against hearsay, in violation of his right to due process of law and to confront and cross-examine the witnesses against him as guaranteed to him by the United States and Pennsylvania Constitutions.

3. The Trial Court erred in refusing to allow Appellant to present the testimony of Michael Fosco, in violation of his constitutional right to due process of law and to present a defense as secured to him by the United States and Pennsylvania Constitutions.

4. The verdict of guilty of Aggravated Assault – Attempt to Cause Serious Bodily Injury to Matthew Mason was not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant acted with the required intent.

5. The verdict of guilty of Aggravated Assault – Attempt to Cause Serious Bodily Injury to Brett Evett was not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant acted with the required intent.

6. The charge of Possession of Drug Paraphernalia was not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant possessed an item with the intent to use it to ingest narcotics.

7. The charge of Aggravated Assault – Attempts to Cause Bodily Injury with a Deadly Weapon to Matthew Mason was not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant attempted to cause bodily injury to Matthew Mason or that Appellant possessed the requisite

11

intent.

8. The charge of Aggravated Assault – Attempts to Cause Bodily Injury with a Deadly Weapon to Brett Evett was not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant attempted to cause bodily injury to Brett Evett or that Appellant possessed the requisite intent.

9. The charge of Aggravated Assault – Attempts to Cause Serious Bodily Injury to Matthew Mason is not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant took a substantial step towards causing serious bodily injury to Matthew Mason.

10. The charge of Aggravated Assault – Attempts to Cause Serious Bodily Injury to Brett Evett is not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant took a substantial step towards causing serious bodily injury to Brett Evett.

11. The charge of Criminal Attempt – Discharge a Firearm Into an Occupied Structure is not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant attempted to discharge a firearm into an occupied structure.

12. The charge of Robbery is not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant intentionally put the victim in fear of immediate serious bodily injury.

13. The charge of Robbery is not supported by sufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that Appellant did this during the course of committing a theft.

14. The Trial Court erred in sentencing Appellant to an aggregate sentence which exceeds what is necessary to protect the public and rehabilitate Appellant.

15. The Trial Court abused its discretion in sentencing Appellant because the Trial Court failed to take into consideration Appellant's age, conduct, character, criminal history, the impact of Appellant's actions on the community, and Appellant's rehabilitative needs.

16. The Trial Court erred in sentencing Appellant because the Trial Court relied on improper factors in imposing sentence.

For the ease of discussion, Appellant's 16 claimed errors may be consolidated into four all-encompassing issues for the purposes of this Opinion:

1. Whether this Court erred in allowing Officer Steven Bailey to testify as to Mr. Matthew Mason's statements, which were allegedly impermissibly admitted into evidence as excited utterances, per the long-recognized exception to the rule against hearsay.

2. Whether this Court erred in not permitting Appellant to present the testimony of Michael Fosco, who, per a proffer from defense counsel, would have testified to events which occurred after January 27, 2021.

3. Whether this Court erred in upholding the jury's verdict that Appellant was guilty of the above-described offenses under Criminal Information Number CP-09-CR-0000862-2021, when the evidence at trial was allegedly insufficient to prove that Appellant committed the myriad offenses.

4. Whether this Court abused its discretion in imposing an aggregate sentence of not less than 11 years nor more than 22 years in a state correctional facility.

## IV. DISCUSSION

### A. This Court did not err in allowing Officer Steven Bailey to testify as to the excited utterance statements by victim Matthew Mason, when they were made shortly after shots were fired in his direction by the Defendant-Appellant.

The Pennsylvania Supreme Court's standard for reviewing evidentiary claims arising from the trial level is well-settled: "... the admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be reversed only upon a showing that the trial court abused its discretion." Com. v. Boczkowski, 846 A.2d 75, 93 (Pa. 2004) (internal citations omitted).

Hearsay is defined as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). As articulated in Commonwealth v. Dent, 837 A.2d 571, 577 (Pa. Super. 2003)(citing Commonwealth v.

Cunningham, 805 A.2d 566, 572 (Pa. Super. 2002)), hearsay statements are "...per se inadmissible..." unless the statement qualifies as an exception to hearsay under the Pennsylvania Rules of Evidence, or is declared admissible by statute or the Pennsylvania Supreme Court.

Pennsylvania Rule of Evidence 803(2), which governs the excited utterance exception to the rule against hearsay, states as follows:

> **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

To qualify as an excited utterance, the statement must be "a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties...." Com. v. Gray, 867 A.2d 560, 570 (Pa. Super. 2005). The Pennsylvania Supreme Court in Commonwealth v. Pronkoskie 383 A.2d 858, 862-63. (Pa. 1978) observed that, unlike other exceptions to hearsay, the excited utterance exception has "... no clear-cut rule as to the time sequence required for a statement to qualify as an excited utterance, ... rather that fact-specific determination is to be made on a case-by-case basis." Gray, 867 A.2d at 570. In sum, to meet the requirements for characterization as an excited utterance, it must be demonstrated, "...first, that [the declarant] ... witnessed an event sufficiently startling

14

and so close in point of time as to render [his or] her reflective thought processes inoperable and, second, that [his or] her declarations were a spontaneous reaction to that startling event." Gray, 867 A.2d at 570 (internal citations omitted).

In the present case, both statements alleged by Appellant to have been improperly admitted fell squarely within the excited utterance exception to hearsay. In Commonwealth v. Gray, the court found that when the daughter approached officers following witnessing an assault on her mother, and then volunteered statements to the officers, the statements fell within the excited utterance exception to hearsay. Gray, 867 A.2d at 571. The Gray court held that "[the daughter] made the statements while dominated by nervous excitement, not her reflective faculties...[and] made the statements near in both time and place to the alleged assault." Id. at 571. These excited utterances were made by the daughter outside the home, while the assault against her mother was ongoing. Id.

As in Gray, Mr. Mason's initial statement to a police officer in the present case that, "he has a gun, he has a gun, he has a gun" N.T. 10/25/2022, pp. 170-71, qualified as an excited utterance. Mr. Mason had clearly perceived "...an event sufficiently startling...", Gray, 867 A.2d at 570, as Appellant had fired his weapon in the direction of Mr. Mason. N.T. 10/26/2022, pp. 148-49. Ms. Alvarado testified that after Appellant shot at him, Mr. Mason fled the Comfort Inn while Appellant gave chase. N.T. 10/26/2022, p. 149. It is evident that Mr. Mason was "....under the stress of excitement...," as Officer Steven Bailey testified that Mr. Mason was screaming the words "he has a gun," repeating the same words three times. N.T. 10/25/2022, pp. 170-71. Additionally, Mr.

15

Mason's statements were "a spontaneous reaction," not a product of reflective thought, as Mr. Mason did not utter his statement in response to any police questioning.

Mr. Mason's second statement, that Appellant was demanding money and that Appellant said "he was going to kill somebody," N.T. 10/25/2022, p. 179, also qualified as an excited utterance. Mr. Mason made this statement after he had fled the building and circled back to speak with Officer Steven Bailey. N.T. 10/25/2022, p. 179. The fact that Mr. Mason did not make these statements immediately following the shooting, does not mandate exclusion of the statements as excited utterances. As articulated in Gray, there is no set time-limit for determining whether a statement constitutes an excited utterance. Gray, 867 A.2d at 570. Indeed in Commonwealth v. Soudani, 155 A.2d 227, 230-31 (Pa. Super. 1959), aff'd, 159 A.2d 686-87 (Pa. 1960), the Superior Court found that statements uttered in response to questions by a nurse administering aid, made 45 minutes after the assault had occurred, while the victim was in shock, and when the statements were made "... near the beginning of the 45 minutes period above referred to...," were admissible under the excited utterance exception.

Here, Mr. Mason made these statements after he had fled the building and returned back to the scene, while the investigation was still actively ongoing. N.T. 10/25/2022, P. 179. While Mr. Mason volunteered these statements in response to Officer Steven Bailey's question, "who said he had a gun?", this did not remove Mr. Mason's statement from the excited utterance exception. N.T. 10/25/2022, pp. 178-79. In Commonwealth v. Colon, 102, A,3d 1033, 1039 (Pa. Super. 2014), the Superior Court stated, "...[t]he jurisprudence of this Commonwealth makes it clear that a statement, which otherwise qualifies as an excited utterance, is not precluded from

16

falling within the excited utterance exception to the hearsay rule when made in response to questioning...." (internal quotation omitted) (internal citation omitted). In Colon, the statement was not removed from the excited utterance exception, when the statement was made only in response to a police officer asking what happened. Id.

The Superior Court's decision in Colon is directly on-point. Although Mr. Mason proffered the statements in response to Officer Bailey's question, Mr. Mason's statements still qualified as excited utterances since, as was true in Colon, Officer Bailey was seeking a clarification as to what happened, Mr. Mason's statements were made while still under the stress of being shot at by Appellant, and Mr. Mason's statements related back to the emergency situation.

Appellant further alleges on appeal that the admission of these statements violated Appellant's constitutional right to confrontation. As applied in Pennsylvania, "...[t]he Confrontation Clause of the Sixth Amendment, applicable to the states through the due process clause of the Fourteenth Amendment, provides that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Commonwealth v. Robins, 812 A.2d 514, 520 (Pa. 2002) (internal citations omitted). However, the Pennsylvania Supreme Court has delineated certain exceptions to the Confrontation Clause requirements, noting in Robins that:

> "...the [United States Supreme] Court has determined that certain hearsay statements marked with sufficient indicia of reliability may be admitted despite the absence of the witness from trial [and despite a Confrontation Clause Challenge]...Such indicia of reliability are deemed present without the need for further inquiry where the statement fits within a "firmly rooted" exception to the hearsay rule, or, alternatively, where the circumstances in which the statement was made manifest particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability."

17

Com. v. Robins, 812 A.2d 514, 522 (Pa. 2002) (internal citations omitted).

The Superior Court in Commonwealth v. Sanford, 580 A.2d 784, 787–88 (Pa. Super. 1990), observed that an excited utterance is an example of a "firmly rooted exception" to the requirements of the Confrontation Clause. In the present case, Mr. Mason returned to Alabama following the incident on January 27, 2021. N.T. 10/27/2022, pp. 237-38. While the Commonwealth attempted to contact Mr. Mason, Defense Counsel was unable to cross-examine Mr. Mason before or during trial.[21] N.T. 10/25/2022, p. 160. Nevertheless, per the above noted rule of evidence and legal standards set forth in decisional law, Mr. Mason's statements clearly fit within the excited utterance exception to the rule against hearsay. Accordingly, Appellant's Confrontation Clause rights were not violated by admission of Mr. Mason's statements.

We note that, even if the admission of Mr. Mason's statements were found to be error (a proposition with which this Court strenuously disagrees,) the alleged error is harmless. Mr. Mason's statements only served to add to and corroborate the overwhelming testimonial and documentary evidence concerning Appellant's criminal conduct on January 27, 2021. At trial, video evidence was provided from the Comfort Inn, Ms. Alvarado testified to how Appellant raised his firearm and fired in the direction of Mr. Mason, and several officers from the Bensalem Township Police Department confirmed that Appellant had a firearm on his person, which had been recently fired. Mr.

---

[21] The Commonwealth attempted to contact Mr. Mason on numerous occasions; officers called Mr. Mason, contacted local police agencies, issued subpoenas, and sent certified mail to his listed address. N.T. 10/26/2022, p. 237. It should be noted that the Commonwealth made contact with Mr. Mason during the morning of October 26, 2022, while trial was ongoing. N.T. 10/26/2022, p. 238. Mr. Mason had been traveling for work, and called into the court once he returned and was informed of the summons. N.T. 10/26/2022, pp. 238-39. At that point, there was insufficient time to fly Mr. Mason from Alabama to Bucks County, N.T. 10/26/2022, p. 239, since the trial was to conclude the next day.

Mason's excited utterance statements were not close to serving as the sole evidence which were the foundation for the jury's decision to convict Appellant.

B. **The Court did not err when it did not permit Michael Fosco to testify, as he would only have testified to events occurring after January 27, 2021, which were not relevant to the crimes charged and which had no probative value.**

It is axiomatic that for a witness to present testimony at trial, the proffered testimony must be relevant. In Commonwealth v. Hawk, 709 A.2d 373, 376 (Pa. 1998), the Pennsylvania Supreme Court declared that in order to be admissible, evidence must be both relevant, and be more probative than unduly prejudicial. The Court defined relevant evidence as "...[e]vidence [which] ... logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." Hawk, 709 A.2d at 376. (internal citation omitted).

In the present case, Appellant's brother, Michael Fosco's proffered testimony was not relevant to establishing Appellant's innocence or guilt as to his actions on January 27, 2021. Outside the presence of the jury, we provided an on the record opportunity for defense counsel to proffer Michael Fosco's proposed testimony. N.T. 10/27/2022, p. 6. Michael Fosco would only have testified to events which happened at least a day after Appellant interacted with victims Matthew Mason, Brett Evett, and Matthew Elliot and was subsequently arrested. N.T. 10/27/2022, p. 8. While Michael Fosco would have allegedly testified that Appellant's vehicle was possibly given to Crystal Kelly, a woman who accompanied Appellant when he rented the hotel room at the Comfort Inn the previous night, and that the vehicle later was found ransacked, Michael Fosco's testimony did not relate to establishing any material fact as to whether

19

or not Appellant was criminally culpable for his actions on January 27, 2021. N.T. 10/27/2022, pp. 6-7. Importantly, it was undisputed that Crystal Kelly was not present during Appellant's interactions with Mr. Mason, Mr. Evett, and Matthew Elliot on January 27, 2021. N.T. 10/27/2022, pp. 8-9. Michael Fosco's proffered testimony would only have related to Crystal Kelly's alleged actions and would not have related to any facts at issue with regard to Appellant's criminal charges which stemmed from his actions on January 27, 2021. N.T. 10/27/2022, pp. 8-9. Therefore, as Michael Fosco's testimony was not relevant to Appellant's conduct on January 27, 2021, we properly precluded Michael Fosco from testifying.

C. **The Commonwealth presented sufficient evidence that Appellant committed the crimes of Aggravated Assault – Attempts to Cause Serious Bodily Injury, Aggravated Assault – Attempts to Cause Bodily Injury with a Deadly Weapon, Criminal Attempt – Discharge of a Firearm Into an Occupied Structure, Robbery, and Possession of Drug Paraphernalia.**

The law on a challenge to the sufficiency of evidence is well-settled in this Commonwealth. In Commonwealth v. Segida, 985 A.2d 871, 880 (Pa. 2009), the Pennsylvania Supreme Court announced the standard as follows:

> When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. The Commonwealth may sustain its burden of proof by wholly circumstantial evidence.

When evaluating the sufficiency of the evidence, the Court "…may not weigh the evidence and substitute [its] judgment for the fact-finder. Com. v. Lewis, 911 A.2d 558, 563 (Pa. Super. 2006) (internal citations omitted). A challenge to the sufficiency of the evidence is only successful if "…the evidence is so weak and inconclusive that as a

matter of law no probability of fact may be drawn from the combined circumstances." Id. Otherwise, any doubts regarding a defendant's guilt may be resolved by the jury as fact-finder. Com. v. Storey, 167 A.3d 750, 757 (Pa. Super. 2017). There is no mandate that "... the facts and circumstances established by the Commonwealth...preclude every possibility of innocence." Id.

We will now address each of Appellant's sufficiency of the evidence contentions.

1. ***The Commonwealth presented sufficient evidence that Appellant committed Aggravated Assault – Attempts to Cause Serious Bodily Injury to Matthew Mason and Brett Evett when Appellant removed his weapon, lifted his weapon, and fired his weapon in their direction.***

Appellant was convicted of two counts of Aggravated Assault – Attempts to Cause Serious Bodily Injury as to victims, Matthew Mason and Brett Evett. Specifically, Appellant alleges that he lacked the required intent for the jury to find him guilty of these charges. The statute defining Aggravated Assault – Attempts to Cause Serious Bodily Injury states as follows:

> A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]
> 18 Pa.C.S. § 2702(a)(1).

In order to establish intent for a conviction under 18 Pa.C.S. § 2702(a)(1), the Superior Court has noted that, "...an inquiry into intent must be determined on a case-by-case basis." Com. v. Bruce, 916 A.2d 657, 661 (Pa. Super. 2007) (internal citation omitted). The Pennsylvania legislature has defined serious bodily injury as "b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or

21

organ." <u>Com. v. Fortune</u>, 68 A.3d 980, 984 (Pa. Super. 2013) (citing 18 Pa.C.S.A. § 2301) (internal quotation omitted).

The Superior Court has noted that intent to cause serious bodily injury may be proven circumstantially, as direct evidence is rarely available. <u>Id.</u> When the Commonwealth intends to prove intent through the introduction of circumstantial evidence, the Superior Court instructs that, "[i]n determining whether intent was proven from such circumstances, the fact finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom." <u>Id.</u> (internal quotations omitted) (internal citation omitted). In <u>Bruce</u>, the Superior Court expressly stated that the presence of a weapon can be considered probative evidence for the purpose of a finding of intent. <u>Id.</u> at 661-62.

The Superior Court stated, "[t]o prevail on a theory of recklessness, the Commonwealth must show an assailant's recklessness rose to the level of malice, a crucial element to sustain a conviction for aggravated assault." <u>Id.</u> at 664 (internal citation omitted). Specific to the charge of aggravated assault, the Superior Court articulated that as to malice, "... [a] defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result. <u>Id.</u> (internal citations omitted).

In the present case, there was more than sufficient evidence to support the jury's finding that Appellant acted with the requisite intent with regard to Mr. Mason and Mr. Evett. As was true in <u>Bruce</u>, which delineated that a probative factor in determining

intent for an aggravated assault conviction is the presence of a firearm, Appellant brought a firearm to the lobby of the Comfort Inn and then fired his weapon in the direction of Mr. Mason and Mr. Evett. N.T. 10/26/2022, pp. 148-49. Furthermore, after Appellant fired in their direction, Appellant chased after them as they ran from the building. N.T. 10/26/2022, p. 149. Ms. Alvarado testified specifically that she observed through a live camera feed, that Appellant removed his firearm from his clothing, and that there was then a "puff of smoke." N.T. 10/25/2022, pp. 115-16. The choices that Appellant made, bringing a firearm to the lobby of the hotel, removing the firearm from his pants pocket, lifting the firearm in the direction of Mr. Mason and Mr. Evett, and then, ultimately discharging his firearm in their direction, are obviously facts sufficient for the jury to find that Appellant possessed the requisite intent.

It should be noted that while Appellant chose to fire his weapon at Mr. Mason and Mr. Evett, Appellant also made several choices on January 27, 2021, not to produce his firearm or otherwise attack several other individuals at the hotel in question. N.T. 10/26/2022, pp. 165-67. A guest of the Comfort Inn even touched Appellant's person, and Appellant chose not to harm her and did not threaten to employ or actually discharge his firearm in that interaction. N.T. 10/26/2022, pp. 166-67. Since Appellant chose to fire his weapon in the direction of Mr. Mason and Mr. Evett, the factfinder, the jury here, could "...conclude [that] the accused intended the natural and probable consequences of his actions to result therefrom." Bruce, 916 A.2d at 661. (internal citation omitted).

Even if this Court were to find that Appellant was not acting intentionally or knowingly, there was sufficient evidence for the jury to find that he acted recklessly.

23

Appellant's decision to fire a loaded weapon in the direction of two individuals – Mr. Mason and Mr. Evett – is definitively a decision where "... one could reasonably anticipate death or serious bodily injury would likely and logically result." Accordingly, there was sufficient evidence for the jury to find that the Commonwealth proved each and every requisite element of the challenged aggravated assault convictions.

2. ***The Commonwealth presented sufficient evidence that Appellant committed Aggravated Assault – Attempt to Cause Bodily Injury with a Deadly Weapon, when Appellant brought a firearm to the lobby of the Comfort Inn, removed his firearm from his pants pocket, and discharged the weapon in the direction of Matthew Mason and Brett Evett.***

Appellant argues that the evidence presented at trial was insufficient to find that Appellant had the requisite intent and/or that Appellant took a substantial step toward fully committing the Aggravated Assault. The statute delineating Aggravated Assault – Attempt to Cause Bodily Injury with a Deadly Weapon, is produced *verbatim* below:

> A person is guilty of aggravated assault if he:
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702 (a)(4).

The Superior Court has observed that, "[f]or aggravated assault purposes, an attempt is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." Com. v. Fortune, 68 A.3d 980, 984 (Pa. Super. 2013) (internal citation omitted.) As articulated by the Court in Commonwealth. v. Stancil, 334 A.2d 675, 677 (Pa. Super. 1975), there is no requirement that an individual victim actually suffer injury in order for an aggravated assault conviction to be upheld. Rather, when evaluating if a

defendant possessed the requisite specific intent, the court must examine the defendant's behavior, and the totality of evidence presented, direct and circumstantial. Com. v. Holley, 945 A.2d 241, 247 (Pa. Super. 2008). Indeed, "...depending on the circumstances even a single punch may be sufficient." Id.

Pennsylvania courts have analyzed numerous cases of aggravated assault. In Commonwealth v. Lopez, 654 A.2d 1150, 1152 (Pa. Super. 1995), the Superior Court held that an individual could be found guilty of Aggravated Assault – Attempt to Cause Bodily Injury with a Deadly Weapon, provided the individual possessed the requisite intent, even in a situation where a person fired the weapon into an empty house. In Commonwealth v. Holley, the Superior Court found that the evidence was sufficient to find the defendant guilty of aggravated assault, since the defendant intended to cause bodily injury with a deadly weapon, when the defendant removed a firearm from a prison guard, and pointed and shot the firearm at the prison guard following a physical altercation. Holley, 945 A.2d at 249.

In the present case, there is clearly sufficient evidence to support the jury's finding that Appellant committed Aggravated Assault – Attempt to Cause Bodily Injury with a Deadly Weapon, as to both Matthew Mason and Brett Evett. Specifically, Appellant produced a firearm in the lobby of the Comfort Inn. N.T. 10/26/2022, pp. 148-49. The Commonwealth presented evidence that while Appellant chose not to aim his firearm at several other patrons of the hotel, N.T. 10/26/2022, pp. 165-67, he lifted and fired his weapon in the direction of Mr. Mason and Mr. Evett. N.T. 10/26/2022, pp. 148-49. Ms. Alvarado corroborated this testimony at trial, as she personally observed Appellant lift his firearm in their direction, and she then heard two gunshots. N.T.

25

10/25/2022, pp. 104. The Commonwealth clearly presented sufficient evidence, then, that Appellant took a substantial step toward causing Mr. Mason and Mr. Evett bodily injury, through the unlawful discharges of his firearm.

Accordingly, there was more than sufficient evidence presented for the jury to determine Appellant was guilty of Aggravated Assault – Attempt to Cause Bodily Injury with a Deadly Weapon.

3. ***The Commonwealth presented sufficient evidence that Appellant committed Criminal Attempt – Discharge a Firearm Into an Occupied Structure, when Appellant attempted to discharge his firearm into an occupied hotel guest room.***

Appellant avers that a hotel room cannot constitute an "occupied structure" for the purposes of a conviction under the pertinent statute. N.T. 10/27/2022, p. 16. The statute regarding Criminal Attempt – Discharge a Firearm Into an Occupied Structure, states as follows:

> A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure.

> 18 Pa.C.S.A. § 2707.1(a)

The Pennsylvania legislature has defined an "occupied structure" as including "[a]ny structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present."18 Pa.C.S.A. § 2707.1(d). In Commonwealth v. Headley, 242 A.3d 940, 948-49 (Pa. Super. 2020), the defendant discharged a firearm into an apartment below the apartment defendant occupied. The Superior Court held that the definition of an "occupied structure" includes separate apartments located within the same apartment building. The Court stated,

"Section 2707.1(d) unambiguously defines occupied structure, and it includes a place adapted for overnight accommodation of persons." Id. (internal quotations omitted.)

In the present case, as was true in Headley, Appellant was within the same building, the Comfort Inn, as victims Matthew Elliot and his family. N.T. 10/25/2022, pp. 94-95; 130-31. The Headley analysis, along with logic, dictates that a separate hotel guest room, much like the separate apartment unit, constitutes an "occupied structure." The Commonwealth presented evidence that Appellant was outside of Matthew Elliot's locked hotel room, and that Appellant removed his firearm from his pants pocket, and attempted to shoot into the occupied hotel room through the door. N.T. 10/25/2022, pp. 136-37. Appellant conceded that he fired his weapon, when he testified at trial that, "...once I realized that I literally shot into the floor, I said to myself, what the – are you doing? And at that point I was just at a loss." N.T. 10/27/2022, p. 44. Each of these action steps that Appellant took demonstrated his intent to recklessly, knowingly, and or intentionally shoot into Matthew Elliot's hotel room, an occupied structure. Accordingly, there was more than sufficient evidence for the jury to find that Appellant was guilty of this offense, and Appellant's claim of insufficiency is meritless.

4. *The Commonwealth presented sufficient evidence that Appellant committed Robbery – Threat of Immediate Serious Bodily Injury when Appellant approached Matthew Elliot, expressly threatened his victim's life in exchange for money, and then used his firearm to shoot at Matthew Elliot's hotel room door.*

Appellant alleges that the Commonwealth failed to present sufficient evidence that Appellant had the intent to place his victim in fear of immediate bodily injury, and that there was insufficient evidence to establish Appellant acted while in the course of

27

committing a theft. The statute regarding Robbery – Threat of Immediate Serious Injury, states as follows:

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>     (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).

In Com. v. Hopkins, 747 A.2d 910, 914 (Pa. Super. 2000), the Superior Court announced that "...[f]or the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury." Id. at 914 (internal quotation omitted) (internal citation omitted). Specifically, as to firearms, the Hopkins court stated, "[a] factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm." Id. at 914-15. The Pennsylvania Supreme Court has interpreted the element, "in the course of committing a theft," as including not only flight after a completed theft, but also the act of attempting to commit a theft. Com. v. Ford, 650 A.2d 433, 437 (Pa. 1994).

In the instant case, the Commonwealth presented sufficient evidence that Appellant placed Matthew Elliot in fear of immediate serious bodily injury, while "in the course of committing a theft." Appellant initially demonstrated a series of "aggressive actions" against Matthew Elliot when he approached him by walking toward him, with his hand in his pocket. N.T. 10/25/2022, pp. 135-36. Matthew Elliot testified that he was unable to tell what was in Appellant's pocket, and that he feared that Appellant had a gun. N.T. 10/25/2022, p. 136. While the Superior Court's decision in Hopkins delineated that there is no requirement that an actual threat be verbalized to support a finding that

28

an individual victim was placed in reasonable fear of serious bodily injury, Appellant here absolutely did, indeed, emphatically threaten Matthew Elliot, directing him to "give [Appellant] everything you got or I'm going to fucking kill you." N.T. 10/25/2022, pp. 135-36. Matthew Elliot reiterated his understandable fear numerous times during his trial testimony. N.T. 10/25/2022, p. 136.

The Commonwealth presented additional evidence as to Matthew Elliot's post-threat state of mind as follows: Matthew Elliot ran and hid behind the locked hotel room door, Appellant proceeded to follow him, removed his firearm from his pocket, and discharged his weapon in the hallway area adjacent to the hotel room.[22] N.T. 10/25/2022, p. 137. Appellant then uttered another threat, stating, "I'm going to take all your fucking money and burn this piece of shit place to the ground." N.T. 10/25/2022, p. 137. Obviously, then, there was an abundance of evidence for the jury to find that Appellant placed Matthew Elliot in reasonable fear of imminent serious bodily injury.

There was also sufficient evidence to support the jury's determination that Appellant acted while "in the course of committing a theft." At the very least, Appellant's actions constituted substantial steps toward committing a theft. Appellant's verbal command, with weapon in hand, to Matthew Elliot, that Mr. Elliot "give [Appellant] everything you got or I'm going to fucking kill you" N.T. 10/25/2022, pp. 135-36, followed by a similar threat, is an obvious attempt to deprive the victim of his money by use of

---

[22] Sergeant Tropiano testified that there were four bullet fragments in front of Matthew Elliot's hotel room door, N.T 10/26/2023, p. 29. He further noted, "there was a mark or hole...in the carpet right outside the door of Room 131 [where Matthew Elliot stayed]." N.T. 10/26/2023, p. 31. A ricochet point from a bullet was located on the "lower part of the door" of Room 131. N.T. 10/26/2023, p. 39. Clearly, there is an abundance of evidence that Appellant discharged his firearm into the carpet outside of Room 131, and based on reasonable inferences, it is evident that Appellant attempted to, albeit failed to, shoot into an occupied structure.

force or by threatening to use force. Accordingly, there was ample and sufficient evidence presented at trial to sustain the jury's guilty verdict as to the robbery charge.

5. ***The Commonwealth presented sufficient evidence that Appellant was guilty of Possession of Drug Paraphernalia, as Appellant admitted to being in the room where the paraphernalia was discovered, Appellant's personal belongings were found within the room, and Appellant requested continuing access to the room.***

Appellant was convicted of one count of Possession of Drug Paraphernalia. The statute regarding Use or Possession of Drug Paraphernalia states:

> The following acts and the causing thereof within the Commonwealth are hereby prohibited: The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32).

Our appellate courts have previously held that possession of drug paraphernalia can be established through a defendant's constructive possession. See e.g., Com. v. Vargas, 108 A.3d 858, 868 (Pa. Super. 2014); there is no requirement that the defendant be in exclusive control of the paraphernalia. Id. To prove constructive possession then, the Vargas court stated that "...the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs [and/or paraphernalia] were kept." Id. (internal quotation omitted) (citation omitted). Mere presence is not sufficient to find that a defendant constructively possessed the contraband. Commonwealth v. Parrish, 191 A.3d 31, 37 (Pa. Super. 2018). In

30

Commonwealth v. Carroll, 507 A.2d 819, 820 (Pa. 1986), the Pennsylvania Supreme Court upheld a defendant's conviction for possession of a controlled substance with intent to distribute, where the defendant was noted to have constructive possession of drug paraphernalia and drugs found within a shared motel room, when the drugs were located in the defendant's wife's pants pocket, cash from a controlled buy was present, and drug paraphernalia was in the motel room bathroom. Id. at 820.

In the instant case, similar to Carroll, there was sufficient evidence to find that Appellant constructively possessed the drug paraphernalia located within the hotel room where he stayed. There is no dispute that Appellant was present in the room, as Ms. Alvarado testified that when she went to the hotel room, she found Appellant in the specific room. N.T. 10/25/2022, pp. 97-98. Nor is there any dispute that drug paraphernalia was within the room where Appellant was present. Sergeant Tropiano testified that when he entered the room where Appellant stayed, he located two trash can vials, one green and one purple, and a glass pipe. N.T. 10/26/2022, p. 53. Sergeant Tropiano further testified that, based on his training and experience, the vial was commonly used to store narcotics, while the glass pipe was commonly used to smoke narcotics. N.T. 10/26/2022, p. 55, 57; See Exhibit C-23.

While Appellant shared the room with Ms. Kelly, N.T. 10/25/2022, pp. 36-38, there was sufficient evidence for a jury to find that Appellant maintained constructive possession over the drug paraphernalia located within the room. When Sergeant Tropiano searched the hotel room Appellant stayed in, he discovered cards registered to Appellant within the room – namely a Harbor Freight Card, PFSU Visa Card, and Home Depot Card. N.T. 10/26/2022, p. 52; See Exhibit C-21; Exhibit C-22. This was not

31

a case where Appellant was "merely present" within the room where drug paraphernalia was discovered. The Commonwealth presented evidence, which the jury could find credible, that Appellant exercised dominion over the room, as Appellant's personal belongings were found throughout. N.T. 10/26/2022, p. 52. Awad Bin Abdullah, a hotel employee, testified that Appellant asked for a key card to the room. N.T. 10/27/2022, p. 13. Appellant himself even confirmed that he voluntarily went to the hotel room where the drug paraphernalia was discovered by Sergeant Tropiano, and that Appellant was in the room for a significant length of time – to bathe, to drink, and to sleep. N.T. 10/27/2022, p. 36-40. Accordingly, there was more than sufficient evidence for the jury to find that Appellant was guilty of possession of drug paraphernalia.

D. **Appellant's Aggregate Sentence of incarceration of not less than 11 Years or more than 22 Years in a State Correctional Facility was lawful, as it was neither unjustified nor manifestly unreasonable.**

Appellant's excessive sentence argument implicates discretionary aspects of sentencing. The law as to an Appellant's right to challenge the discretionary aspects of sentencing is well-settled. As stated in Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa. Super. 2014), there is no absolute right to appeal under these circumstances. See also 42 Pa. C.S. Section 9781(b). Instead, in instances where an appellant challenges the discretionary aspects of a sentence, the appeal is treated as a petition for allowance of appeal to the Superior Court. See Commonwealth v. Hill, 210 A.3d 1104, 1116 (Pa. Super. 2019). Furthermore,

> [a]n appellant challenging the discretionary aspects of [his] sentence must invoke [the Superior] Court's jurisdiction by satisfying a four-part test:... (1) whether appellant has filed a timely notice of appeal, see Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa. R.Crim.P. 720.; (3) whether appellant's brief has a fatal defect, Pa. R.A.P.

32

2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa. C.S.A. § 9781(b).

Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010) (citing Commonwealth v. Evans, 901 A.2d 528, 533 (Pa. Super. 2006)). [23]

Upon granting appeal and review of the sentence imposed, the Superior Court's standard of review is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Edwards, 194 A.3d 625, 637 (Pa. Super. 2018) (citing Commonwealth v. Mann, 957 A.2d 746, 749 (Pa. Super. 2008)).

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." Commonwealth v. Hill, 210 A.3d 1104, 1116-17 (Pa. Super. 2019) (quoting Commonwealth v. Griffin, 804 A.2d 1, 10 (Pa. Super. 2002)). A sentence of confinement must also be consistent with what is necessary for the protection of the public, "the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). The sentencing court must state on the record the reasons for the sentence imposed. Pa. R.Crim.P. 704(C)(2).

The Sentencing Code affords discretion for the sentencing court to impose concurrent or consecutive sentences, unless the aggregate sentence is "grossly

---

[23] Appellant here met the first three procedural requirements of the four-part test.

disparate" to the Defendant's conduct, or "viscerally appears as patently unreasonable." Commonwealth v. Gonzalez-DeJusus, 994 A.2d 595 (Pa. Super. 2010); 42 Pa. C.S. §9721. Additionally, when, as is true in the instant case, the sentencing court has the benefit of a Pre-Sentence Investigation Report ("PSI Report"), it is presumed that the court was both aware of and appropriately weighed all relevant information contained in the PSI Report. See Commonwealth v. Griffin, 804 A.2d 1, 8 (Pa. Super. 2002). Indeed, we did so in the present case.

### 1. *Appellant has Arguably Averred a Substantial Question on Appeal Which Requires Review of the Sentence Imposed on March 24, 2023.*

"The determination of what constitutes a substantial question as to an allegedly inappropriate sentence must be evaluated on a case-by-case basis." Commonwealth v. Swope, 123 A.3d 333, 338 (Pa. Super. 2015) (citing Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa. Super. 2011)). 'A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Id.

Appellant on appeal does not provide specifics as to how the sentence was allegedly excessive, how we allegedly failed to take into account the specified factors, or which improper factors upon which we allegedly impermissibly relied. However, due to Appellant plausibly raising a substantial question on appeal, decisional law mandates that the Superior Court exercise appellate review as to this issue.[24]

---

[24] See Commonwealth v. Brown, 249 A.3d 1206 (Pa. Super. 2021); Commonwealth v. Pacheco, 227 A.3d 358, 376 (Pa. Super. 2020); Commonwealth v. Hill, 210 A.3d 1104, 1116 (Pa. Super. 2019); Commonwealth v. Raven, 97 A.3d 1244 (Pa. Super. 2014).

34

2. *Appellant's Sentence was Not Based on Improper Factors, Nor was it Manifestly Excessive or Unreasonable, as the Sentence Imposed Was Within the Sentencing Ranges set forth in 42 Pa. C.S. Section 9721 and in Pennsylvania's Sentencing Guidelines.*

In the present case, we held a sentencing hearing on March 24, 2023, where Appellant called and presented the testimony of several witnesses. Earlier, we had ordered a Pre-Sentence Investigation be conducted as to Appellant and we had the benefit of reviewing the comprehensive PSI Report, prior to the date of sentencing.

On March 24, 2023, we provided on the record, the following rationale for our determination of Appellant's sentence:

> ...[T]he job of the Court, ... [as to] sentencing [is] to balance off a whole host of factors. And I have tried to be conscientious in doing so here.
>
> ... I certainly consider the arguments of counsel today, I've considered the testimony presented by the defense, I considered all of the evidence that I heard during the ... four- day jury trial in October of 2022, including Mr. Fosco's testimony at that time, as well as today. ... I've certainly considered the comprehensive PSI report dated January 11th, 2023, I've considered the criminal history which has been referenced by both sides here, history of alcohol abuse and the severity of the crimes. . . .
>
> The crimes really were reckless. And whether there was drug induced mental state or not, ... unfortunately we do not have any blood or other test to tell us what the content of Mr. Fosco's blood was at the time. But there's no question that alcohol was involved and there's also no question, Mr. Fosco, that you and alcohol do not mix too well.
>
> So besides the three DUIs we have in the PSI, we have a number of people who have said that.... [Y]our stepfather, Donald, stated that he feels the defendant's drinking alcohol plays a part when

35

you get in trouble. In regard to the instant offense, Donald states the defendant probably made a mistake and did something stupid. When he would drink, he would act stupid.

Your brother Michael indicated in the PSI that he's sure that the defendant consumed alcohol that night.

...Your sister Michelle, ... described the defendant as allowing his alcoholism to ruin their relationship over the past 15 years.

And Lisa, your own wife, stated to the investigator ... that your relationship had its ups and downs and you were both getting out of hand with drinking alcohol.

So certainly alcohol had something to do with this incident and maybe other substances as well, I don't know. But regardless of the reason, these were terribly violent acts. It's astounding that no one got hurt or killed, including a number of family members who were minding their business and just visiting, besides other people in the hotel lobby, not to speak of the employees of the Comfort Inn. So they've got a lifetime of trauma because of your actions, Mr. Fosco, and there's no denying that. Someone who is shot at and witnessed what they witnessed, they'll never get over that. Their lives will never be the same.

The PSI indicates that the risk assessment tool that was used indicates that you have a moderate to high risk of reoffending. So that needs to be taken into consideration as well.

There are positive parts of your life and I'm not dismissing that at all. ... [I]ncluding your service in the military, including that you earned a GED... You have a work ethic and that's to be commended. And your work in the prison is to be commended as well. That's not an easy job, I know that. So I do take that into consideration.

And I don't give up easily on people in terms of hope. I do think there is hope for you but I absolutely think besides the substantial punishment that is needed and really called for under the law in these circumstances because of how serious the crimes are and because of our interest in protecting the community, you need drug and alcohol treatment. And I haven't heard anything, anywhere that you've ever had any. [Y]ou've been in prison now for ... two years and two months after the arrest ... and it looks like you've had no treatment whatsoever, and that's not good...That's a problem and that needs to change.

...I do think when you have structure, when you're sober, you appear to do relatively well. But when you don't have structure and when you're not sober, you've been dangerous on more than one occasion. That's a problem.

... I've also considered the Pennsylvania Sentencing Guidelines which are referenced extensively in the PSI. I do think the standard range is appropriate here. As you know, the jury convicted you ... of 25 of the 35 offenses with which you were charged on the day in question. So under all of these circumstances, a substantial sentence of state incarceration is mandated.

N.T. 03/24/2023, pp. 37-40.

Pursuant to the applicable sentencing guidelines,[25] the standard range for

Counts 6 and 7 (Aggravated Assault – Attempts to Cause Serious Bodily Injury with

Extreme Indifference) was a minimum of 54 months to 66 months in a state correctional

---

[25] The sentencing guidelines are not binding upon the sentencing court, which need only acknowledge and consider them, while exercising its own independent judgment. Com. v. Wells, 926 A.2d 957 (Pa. 2007).

37

facility. This Court sentenced Appellant on each of these counts, to run consecutively,[26] to a period of incarceration in a state correctional facility of not less than 42 months or more than 84 months. Accordingly, Appellant's sentence was imposed in the mitigated range of the applicable sentencing guideline.

As to applicable sentencing guidelines for Count 8 (Robbery – Threat of Immediate Serious Injury) the standard range was a minimum of 54 months to 66 months in a state correctional facility. This Court sentenced Appellant on Count 8 to not less than 24 months or more than 48 months. Appellant's given maximum sentence is below the mitigated range. The sentence imposed on at Count 8 is to run consecutively to the sentence on Count 7.

While, pursuant to the applicable sentencing guidelines, the standard range for Count 14 (Criminal Attempt – Discharge of a Firearm into an Occupied Structure) was a minimum of 36 months to 42 months in a state correctional facility. Appellant was sentenced to not less than 12 months or more than 24 months in a state correctional facility. Appellant's sentence on Count 8, then, was below the mitigated range noted in the applicable sentencing guidelines. Appellant's sentence imposed on Count 14 is to run consecutively to Appellant's sentence on Count 8.

As to the applicable sentencing guidelines for Count 16 (Firearms Not to be Carried Without a License), the standard range was a minimum of 24 months to 36 months in a state correctional facility. This Court sentenced Appellant on Count 16 to not less than 12 months nor more than 24 months in a state correctional facility, with the

---

[26] "It is well established that Pennsylvania law affords the trial court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time." Com. v. Dove, 301 A.3d 427, 436 (Pa. Super. 2023) (internal quotations omitted) (internal citations omitted).

38

sentence to run consecutively to the sentence imposed on Count 14. Appellant's sentence was within the mitigated range of the applicable sentencing guideline. We imposed no further penalty on Counts 9, 13, 15, and 17-34.[27] Appellant was ordered not to possess any firearms, he was ordered to have no contact with the victims and the Bensalem Comfort Inn and Suites, and the state Department of Corrections was urged to have Appellant undergo Drug and Alcohol Treatment. N.T. 03/24/2023, pp. 44-45.

The evidence of record demonstrates then, that we considered a multitude of factors when determining the appropriate sentence for Appellant. Specifically, the notes of testimony indicate that we relied on admissible information contained within the comprehensive Pre-Sentence Investigation Report, that we focused on Appellant's rehabilitative needs particularly with regard to alcohol and drug use, and his need for structure, and that we appropriately took into account Appellant's criminal history, the gravity of his violent crimes, as they impacted the victims and the community, along with Appellant's likelihood to reoffend due to his unhealthy relationship with alcohol. The notes of testimony of Appellant's March 24, 2023, Sentencing Hearing demonstrate, then, that we took into consideration all appropriate and applicable factors when determining Appellant's sentence.

As such, Appellant's sentence was well within the guidance of the fundamental norms adhered to by courts in the sentencing process and it was well within the bounds of the appropriate Pennsylvania Sentencing statutes and guidelines. Appellant's sentence was neither excessive nor manifestly unreasonable. Appellant's arguments to the contrary are without merit.

---

[27] As noted previously, then, the aggregate sentence imposed is not less than 11 years or more than 22 years in a state correctional facility.

39

## V. CONCLUSION

Based on all of the foregoing; we respectfully submit that this Court's March 24, 2023 Judgment of Sentence in the above-captioned matter should be affirmed.

BY THE COURT:

Date: November 30, 2023

_____
GARY B. GILMAN, JUDGE

RECEIVED
2023 DEC -1 A 10: 34
BUCKS COUNTY
CLERK OF COURTS